**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| NAYTHAN A. WARD, individually and on behalf of all others similarly situated, | CASE NO.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| THE J.M. SMUCKER COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Naythan Ward ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this action against The J.M. Smucker Company ("Smucker Company" or "Defendant"). Plaintiff makes the following knowledge as to their own acts, and upon information and belief, and investigation, as to all other matters, alleging as follows:

## PRELIMINARY STATEMENT

1.      This is a Class Action brought on behalf of all persons who have purchased Jif® peanut butter products sold in the United States between February, 2022 and May, 2022. Plaintiff pursues claims against the Smucker Company for negligence, breach of warranties, fraudulent concealment, and unjust enrichment seeking redress for Defendant's business practices designed to mislead the public in connection with their promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of Jif® peanut butter products which Defendant, during the relevant time period, promoted as containing ingredients safe for human consumption and being

1

safe for use, when, in fact, they cause bacterial infections, gastrointestinal illnesses and other illnesses resulting from *Salmonella* contamination.

---

**Is Jif® peanut butter healthy?** ▲

We pride ourselves on offering quality products with the best ingredients. To see our nutrition facts, please visit each product listing for nutritional information.

2.      The J.M. Smucker Company manufactures, labels, markets, and sells Jif® peanut butter products.

https://www.jmsmucker.com/brands-you-love/consumer-foods.

3.      Jif® peanut butter is one of the nation's leading producers of what is considered to be high quality, safe peanut butter. Consumers expect, when they purchase Jif® peanut butter products, they are purchasing safe and healthy peanut butter. This is especially true of Jif® peanut butter products, which are advertised as using high quality products.






https://www.jif.com/about-us/faq

4.      Unfortunately for Plaintiff, and all other similarly situated consumers of Jif®
peanut butter products, Jif® peanut butter products sold with the lot codes 1274425 – 2140425
with the first seven numbers ending in "425" were contaminated with *Salmonella*.

5.      On May 20, 2022, The J.M. Smucker Company recalled Jif® peanut butter products
sold in the United States. As the recall explained "*Salmonella* is an organism which can cause
serious and sometimes fatal infections in young children, frail or elderly people, and others with
weakened immune systems. Healthy persons infected with *Salmonella* often experience fever,
diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances,
infection with *Salmonella* can result in the organism getting into the bloodstream and producing
more severe illnesses such as arterial infections (i.e., infected aneurysms), endocarditis and
arthritis."[1]

6.      The J.M. Smucker Company recalled over 40 Jif® peanut butter products that were
contaminated by *Salmonella*.[2]

7.      Plaintiff and consumers do not know, and did not have a reason to know, that the
Jif® peanut butter products purchased were contaminated with *Salmonella*. Consumers expect the
food they purchase to be safe for consumption and not contaminated by an organism "which can
cause serious and sometimes fatal infections."[3]

8.      Plaintiff purchased Jif® peanut butter products manufactured and sold by The J.M.
Smucker Company, unaware that it was contaminated with *Salmonella*.

---

[1] *J.M. Smucker Co. Issues Voluntary Recall*, FDA, 2022 https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/j-m-smucker-co-issues-voluntary-recall-select-jifr-products-sold-us-potential-salmonella (last visited May 26, 2022).
[2] *J.M. Smucker Co. Issues Voluntary Recall*, FDA, 2022 https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/j-m-smucker-co-issues-voluntary-recall-select-jifr-products-sold-us-potential-salmonella (last visited May 26, 2022).
[3] *Id.*

9.      Plaintiff brings this action on his/her own behalf, and on behalf of all other purchasers of Jif® peanut butter products with lot codes 1274425 – 2140425 and the first seven numbers end with "425", to seek refunds and all other economic losses suffered as the result of their purchases of Jif® peanut butter products, as well as injunctive relief.

## PARTIES

10.     Plaintiff is a citizen and resident of Michigan, residing in Oakland County, Michigan. Plaintiff purchased of Jif® peanut butter products manufactured by The J.M. Smucker Company.

11.     The J.M. Smucker Company is incorporated in Ohio and has its company headquarters in Orrville, Ohio. The of Jif® peanut butter products are sold and purchased throughout the United States.

## JURISDICTION AND VENUE

12.     This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

13.     Defendant transacts business within this District through the sale of Jif® peanut butter products within this District, at grocery stores, drug stores, big box stores, membership stores, and sold online directly to the citizens of this District.

14.     Venue is proper in this district under 28 U.S.C. §1391 because Defendant conducts business in this District, is subject to jurisdiction in this district, and has sold, marketed, and or

distributed contaminated Jif® peanut butter products within this District at all times relevant to this suit, and because a substantial part of the acts or occurrences giving rise to this suit occurred within this District.

## FACTUAL ALLEGATIONS

15.     Plaintiff repeats, reiterates, and realleges, each and every allegation contained in this complaint with the same force and effect as if fully set forth herein.

16.     The J.M. Smucker Company manufactures, labels, and sells Jif® peanut butter products.

17.     On May 22, 2022, the U.S. Food and Drug Administration ("FDA") announced that it, along with the Center of Disease Control ("CDC"), and others are investigating a "multistate outbreak of *Salmonella* Senftenberg infections linked to certain Jif peanut butter products produced at the J.M. Smucker Company Facility in Lexington, Kentucky."[4]

18.     Specifically, the FDA stated that the "FDA conducted Whole Genome Sequencing ("WGS") analysis on an environmental sample collected at the Lexington, KY, J.M. Smucker Company facility in 2010. The analysis shows that this 2010 environmental sample matches the strain causing illnesses in this current outbreak. Epidemiologic evidence indicates that Jif brand peanut butter produced in the J.M. Smucker Company facility located in Lexington, KY, is the likely cause of illnesses in this outbreak."[5] The "FDA's investigation is ongoing and more information will be provided as it becomes available."[6]

19.     Further, the CDC's release of epidemiological information indicated that of the five reviewed *Salmonella* Senftenberg cases, five out of five people reported consuming peanut butter

---

[4] *Outbreak Investigation of Salmonella: Peanut Butter*, FDA, 2022  https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022 (last visited May 26, 2022).
[5] *Id.*
[6] *Id.*

and four of the five people specifically reported consuming different varieties of Jif brand peanut butter prior to becoming ill.[7]

20.      The FDA advised all consumers to "not eat any recalled Jif brand peanut butter. Throw it away."[8]

21.      The FDA's Investigation Details as of May 26, 2022 states "a total of 16 people infected with the outbreak of *Salmonella* Senftenberg have been reported from 12 states. Illnesses started on dates ranging from February 17, 2022, through May 1, 2022. Sick people range in age from less than one to 85 years, with a median age of 56, and 71% are female. Of 6 people with information available, 2 have been hospitalized."

https://www.cdc.gov/salmonella/senftenberg-05-22/details.html

22.      According to the Center for Disease Control ("CDC"), *Salmonella* "symptoms usually begin six hours to six days after infection and last four to seven days. However, some people do not develop symptoms for several weeks after infection and others experience symptoms for several weeks. *Salmonella* strains sometimes cause infection in urine, blood, bones, joints, or the nervous system, and can cause severe disease."[9]

23.      However, "most people infected with *Salmonella* experience diarrhea, fever, and stomach cramps… Some people – especially children younger than 5 years, adults 65 years and older, and people with weakened immune systems – may experience more severe illnesses that require medical treatment or hospitalization."[10]

---

[7] *Salmonella Outbreak Linked to Peanut Butter*, CDC, https://www.cdc.gov/salmonella/senftenberg-05-22/index.html?fbclid=IwAR1MnI15sgv_OwryFygCTm5DlrVPypnzZqDNEdnzB03rlhwlrKzg7oKM7gI (last visited May 26, 2022).
[8] *Id.*
[9] *Questions and Answers*, CDC, 2022 https://www.cdc.gov/salmonella/general/index.html (last visited May 26, 2022)
[10] *Salmonella Outbreak Linked to Peanut Butter*, CDC, 2022 https://www.cdc.gov/salmonella/senftenberg-05-22/index.html?fbclid=IwAR1MnI15sgv_OwryFygCTm5DlrVPypnzZqDNEdnzB03rlhwlrKzg7oKM7gI (last visited May 26, 2022).

24.     The Jif® peanut butter products being recalled are identified by lot code.



**Case Count Map Provided by CDC**

https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022

25.     Plaintiff purchased a Jif® peanut butter product on February 22, 2022 that was identified as being recalled as identified by the lot code 2012 425.



7

26.     At least one of the Jif® peanut butter products purchased had lot numbers matching the contaminated lots identified by the FDA's safety alert on May 20, 2022.

27.     On May 20, 2022, The J.M. Smucker Company recalled Jif® peanut butter products.

28.     Had Plaintiff known that the Jif® peanut butter product they bought were contaminated with *Salmonella*, she would not have purchased Jif® peanut butter products.

29.     Plaintiff, and all other consumers of the recalled Jif® peanut butter products, have suffered economic losses.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff on behalf of himself and all Class members, seek damages, multiplied as provided by law against The J.M. Smucker Company.

31.     Plaintiff brings this action on behalf of himself and under Fed. R. Civ. P. 23(a) and (b)(1)(A) and (b)(3), as representative of a class of persons who are asserting claims for personal injuries against The J.M. Smucker Company, caused by the recall of contaminated Jif® peanut butter products. Plaintiff proposes a Nationwide Class and, in the alternative, a Michigan Subclass defined as follows:

**Nationwide Class:**

All persons in the United States who have purchased Jif® peanut butter products that were recalled by The J.M. Smucker Company on or around May 20, 2022.

**Michigan Subclass:**

All persons who are citizens and residents of Michigan who have purchased Jif® peanut butter products that were recalled by The J.M. Smucker Company on or around May 20, 2022.

32.     Excluded from the Class are:

    a.  Defendant and its officers, directors, management, employees, subsidiaries, or affiliates;

    b.  All federal government entities;

    c.  All states (and sub-units of government and their entities) that, by law, preclude their participation as plaintiffs in private class action litigation;

    d.  The judges in this case and any members of their immediate families.

33.     Common questions of law or fact predominate and include:

    a.  Whether Defendant Negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of Jif® peanut butter products;

    b.  Whether Defendant sold the contaminated Jif® peanut butter products, that was unreasonably dangerous to consumers such as Plaintiff and members of the Class;

    c.  Whether Defendant failed to adequately warn Plaintiff and the Class of the dangers with respect to the contaminated Jif® peanut butter products;

    d.  Whether Defendant was Negligent for failure to warn the Plaintiff and the Class through the FDA;

    e.  Whether Plaintiff and the Class suffered Damages as a result of the contaminated Jif® peanut butter products; and

    f.  Whether Defendant was Negligent for Failure to test.

34.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same tainted product and injured by the product and its recall.

35.     Plaintiff will fairly and adequately protect and represent the interests of the Class. Plaintiff's interests coincide with, and not antagonistic to, those of the Class.

36.     No individual inquiry is necessary since the focus is only on Defendant's practice and the Class is definable and ascertainable.

37.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect Class members' interests adequately and fairly.

38.     Class action treatment is a superior method for the fair and efficient of adjudication of the controversy. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a Single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

39.     Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude litigating it as a class action.

## CAUSES OF ACTION

### COUNT I
### Products Liability - Breach of Express Warranty

40.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

41.     Plaintiff brings this claim against Defendant on behalf of himself and all Class Members.

42.     The Jif® peanut butter products is a "good" under all relevant laws.

43.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and each member of the Class purchased the Defendant's Jif® peanut butter products.

44.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

45.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

46.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Jif® peanut butter products is safe for its intended use.

47.     Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

48.     Defendant breached express warranties about the Jif® peanut butter products and their qualities because Defendant's Product contained *Salmonella* unsafe for consumption at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above

49.     Plaintiff and each member of the Members of the Class would not have purchased the Jif® peanut butter products had they known the true nature of the harmful *Salmonella* contamination.

50.     As a result of Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury and are entitled to all damages, in addition to costs, interests, and fees, including attorney's fees, as allowed by law.

## COUNT II
## Products Liability - Breach of Implied Warranty

51.     Plaintiff repeats and re-alleges the allegations above as set forth herein.

52.     Plaintiff brings this claim against Defendant on behalf of himself and all Class Members.

53.     The J.M. Smucker Company is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Jif® peanut butter products.

54.     The Jif® peanut butter products are "goods" under the relevant laws, and The J.M. Smucker Company knew or had reason to know of the specific use for which the Jif® peanut butter products, as goods, were purchased.

55.     The J.M. Smucker Company entered into agreements with retailers to sell the Jif® peanut butter products to be used by Plaintiff and Class Members for personal use.

56.     The implied warranty of merchantability included with the sale of each Product means that The J.M. Smucker Company guaranteed that the Products would be fit for the ordinary purposes for which peanut butter is used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between The J.M. Smucker Company, and Plaintiff and the Class Members.

57.     The J.M. Smucker Company breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of being consumed by adults and children because the Jif® peanut butter products result in *Salmonella* infections. Therefore, the Products are not fit for their particular purpose of safely being consumed by adults and children.

58.     The J.M. Smucker Company's warranty expressly applies to the purchaser of the Jif® peanut butter products, creating privity between The J.M. Smucker Company and Class Members.

59.     However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of The J.M. Smucker Company's warranties and its sale through retailers. The J.M. Smucker Company's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. The J.M. Smucker Company's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

60.     The J.M. Smucker Company has been provided with sufficient notice of its breaches of implied warranties associated with the Jif® peanut butter products.

61.     Had Plaintiff, Class Members, and the consuming public known that the Jif® peanut butter products were unsafe for consumption, they would not have purchased the Jif® peanut butter products or would have paid less for them.

62.     As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interests and fees, including attorney's fees, as allowed by law.

## COUNT III
## Negligence

63.     Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

64.     Plaintiff brings this Claim against Defendant on behalf of himself and all Class Members.

65.     Defendant, directly or indirectly, caused Jif® peanut butter products to be sold, distributed, marketed, promoted, and/or consumed by Plaintiff and Class Members.

66.     At all times relevant to this litigation, Defendant owed a duty to Plaintiff, Class Members, and the consuming public to exercise reasonable care in its designing, marketing, supplying, packaging, promoting, and selling Jif® peanut butter products, including the duty to prevent *Salmonella* contamination of the Jif® peanut butter products.

67.     Defendant also owes a duty to Plaintiff, Class Members, and the consuming public to manufacture, distribute, and sell Jif® peanut butter products that are safe and fit for human consumption, meaning without *Salmonella*.

68.     Plaintiff and all Class Members are reasonable consumers who expect companies, like The J.M. Smucker Company, to manufacture, distribute, and sell peanut butter products that are safe and fit for human consumption.

69.     At all relevant times to this litigation, Defendant knew, or in the exercise of reasonable care, should have known that Plaintiff and Class Members purchased Jif® peanut butter products for human consumption.

70.     Defendant breached its duty to design, manufacture, distribute, and sell Jif® peanut butter products that are safe and fit for human consumption when it manufactured, distributed, and sold Jif® peanut butter products contaminated with *Salmonella*.

71.     Despite the ability and means of the Defendant to design, manufacture, distribute, and sell Jif® peanut butter products without *Salmonella*, Defendant failed to do so. Indeed, Defendant wrongfully produced, manufactured, distributed, and sold Jif® peanut butter products that were unsafe and unfit for human consumption.

72.     Defendant's negligence included:

a. Selling and/or distributing Jif® peanut butter products contaminated with *Salmonella*;

b. Selling and/or distributing Jif® peanut butter products while negligently and/or intentionally concealing the *Salmonella* contamination;

c. Failing to promptly notify Plaintiff and Class Members of the *Salmonella* contamination of Jif® peanut butter products; and

d. Systematically failing to promptly notify the consuming public of the *Salmonella* contamination of Jif® peanut butter products.

73.     As a direct and proximate result of Defendant's breach of duty by manufacturing, distributing, and selling *Salmonella* contaminated Jif® peanut butter products, Plaintiff and all Class Members have suffered, and will continue to suffer, economic loss. Plaintiff and all Class Members had purchased the Jif® peanut butter products to consume, and are unable to do so as a direct result of Defendant's negligence.

74.     Plaintiff's and Class Members' injuries were foreseeable to Defendant because the FDA has linked the current *Salmonella* outbreak to an outbreak found in 2010 at the same manufacturing facility in Lexington, KY.[11]

75.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT IV
## Negligent Failure to Warn

---

[11] *Outbreak Investigation of Salmonella: Peanut Butter*, FDA, 2022  https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022 (last visited May 26, 2022).

76.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

77.     Plaintiff brings this count on behalf of himself and the Class.

78.     Defendant owed Plaintiff and Class members a duty of care and to warn consumers of any risks associated with the Jif® peanut butter products.

79.     Defendant knew or should have known of the contamination of *Salmonella* within the Jif® peanut butter products but failed to want Plaintiff and Members of the Classes.

80.     Defendant's breach of duty caused Plaintiff and Class Members economic damages and injuries in the form of economic loss from the market value of the Jif® peanut butter products at the time of purchasing to the value of purchasing contaminated Jif® peanut butter products.

81.     Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorney's fees, available under law.

## COUNT V
## Negligent Design Defect

82.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

83.     Plaintiff brings this count on behalf of himself and the Class.

84.     Defendant owes a duty to Plaintiff and Class Members to design the Jif® peanut butter products in a reasonable manner.

85.     The design of the Jif® peanut butter products was defective and unreasonably dangerous, causing *Salmonella* infections.

86.     The design of the Jif® peanut butter products caused it to be not fit, suitable, or safe for their intended purpose. The dangers of the Jif® peanut butter products outweighed the benefits and rendered the Jif® peanut butter products to be unreasonably dangerous.

87.     There are other peanut butter products that do not cause *Salmonella* infections.

88.     The risk/benefit profile of the Jif® peanut butter products was unreasonable, and the Jif® peanut butter products should not have been sold in the market.

89.     The Jif® peanut butter products did not perform as a reasonable consumer would expect.

90.     The Defendant's negligent design of the Jif® peanut butter products was the proximate cause of the damages to Plaintiff and Class Members.

91.     Plaintiff and Class Members suffered damages in the amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorney's fees, available under law.

## <u>COUNT VI</u>
## Breach of Implied Warranty of Merchantability

92.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

93.     Plaintiff brings this count on behalf of himself and the Class.

94.     Defendant is a merchant engaging in the sale of goods to Plaintiff and Members of the Class.

95.     There was a sale of goods from Defendant to Plaintiff and from Defendant to Members of the Class.

96.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Jif® peanut butter products impliedly warranted to Plaintiff and the Class that the Jif® peanut

17

butter products were fit for their intended purpose in that they would be safe for Plaintiff and Class Members to consume.

97.    Contrary to these representation and warranties, the Jif® peanut butter products were not fit for their ordinary use, and did not conform to Defendant's affirmations of fact and promises because use of the Jif® peanut butter products was accompanied by the risk of adverse health effects that do not conform to the packaging and consumer standards.

98.    Defendant breached the implied warranty in the contract for the sale of Jif® peanut butter products by knowingly selling to Plaintiff and the Classes a product that Defendant knew would expose Plaintiff and the Class to significant health risks, thus meaning Defendant knew that the Jif® peanut butter products were not fit for their intended purpose.

99.    Defendant was on notice of this breach, as it aware of the adverse health effects caused by *Salmonella* in the Jif® peanut butter products.

100.    Plaintiff and Class Members did not receive the goods as bargained for because the goods were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

101.    Plaintiff and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

102.    The Jif® peanut butter products were not altered by Plaintiff or Members of the Class.

103.    Plaintiff and Members of the Class used the Jif® peanut butter products in the ordinary manner in which such products are intended to be used.

104.    The Jif® peanut butter products were defective when they left the exclusive control of Defendant.

105.    The Products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff and members of the Class did not receive the goods that they bargained for.

106.    Plaintiff and members of the Class purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

107.    As a result of the defect in the Jif® peanut butter products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective product, loss of use of the device and other related damage.

108.    Defendant breached the implied warranty of merchantability to the Plaintiff and Class Members.

109.    Thus, Defendant's attempt to limit or disclaim the implied warranty of merchantability in a manner that would exclude coverage of the defect is unenforceable and void.

110.    Plaintiff and Class Members have been damaged by Defendant's breach of the implied warranty of merchantability.

111.    Plaintiff and Class Members suffered damages in the amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorney's fees, available under law.

## COUNT VII
## Strict Liability – Failure to Warn

112.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

113.    Plaintiff brings this count behalf of himself and the Class.

114.    Defendant had a duty to warn Plaintiff and the Class members regarding the Defect and the true risks associated with the Jif® peanut butter products.

115.    Defendant was in a superior position to know of the *Salmonella* contamination, yet, as outlined above, chose to do nothing when the defect became known to them.

116.    Defendant failed to provide adequate warnings regarding the risks of *Salmonella* within the Jif® peanut butter products after knowledge of the defect was known only to them.

117.    Defendant had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings.

118.    Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

119.    Plaintiff and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Jif® peanut butter products if they knew of the Defect and the risks of purchasing the Products.

120.    The *Salmonella* contamination proximately caused Plaintiff's and Class members' damages.

121.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VIII
## Strict Liability – Design Defect

122.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

123.    Plaintiff brings this count on behalf of himself and the Class.

124.    The design of the Jif® peanut butter products was defective and unreasonably dangerous.

125.    Use of Defendant's Jif® peanut butter products by Plaintiff and Members of the Class caused exposure to *Salmonella* infections.

126.    The design of the Jif® peanut butter products by Defendant rendered them not reasonably fit, suitable, or safe for their intended purposes.

127.    The dangers of the Jif® peanut butter products outweighed the benefits and rendered the Jif® peanut butter products unreasonably dangerous to Plaintiff and Members of the Class.

128.    There are other peanut butter products that do not cause *Salmonella*, meaning that there were other means of production available to Defendant.

129.    The Jif® peanut butter products were unreasonable unsafe, and the Jif® peanut butter products should have had stronger and clearer warnings or should not have been sold in the market.

130.    The Jif® peanut butter products did not perform as an ordinary consumer would expect.

131.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT X
## Fraudulent Concealment

132.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

133.     Plaintiff brings this Claim against Defendant on behalf of himself and all Members of the Class.

134.     Defendant concealed and suppressed material facts regarding the Jif® peanut butter products – most importantly, the fact that it was contaminated with *Salmonella*.

135.     As alleged above, Defendant knew, or should have known, that the Jif® peanut butter products was defective due to the contamination of *Salmonella*. As a consequence, the contaminated Jif® peanut butter products were no longer safe and fit for human consumption.

136.     The contamination of *Salmonella* within a product meant for human consumption poses a serious health risk to those that bought and consumed the Jif® peanut butter products. Therefore, the Jif® peanut butter products is unreasonably dangerous because it can cause "diarrhea, fever, and stomach cramps… Some people – especially children younger than 5 years, adults 65 years and older, and people with weakened immune systems – may experience more severe illnesses that require medical treatment or hospitalization."[12]

137.     Defendant acquired knowledge of the *Salmonella* contamination prior to Plaintiff and Class Members purchasing the Jif® peanut butter product through sources not available to consumers including, but not limited to, the FDA, FDA testing, Defendant's own testing of the facility, Defendant's own testing of the individual Jif® peanut butter products, and complaints from consumers.

138.     While Defendant knew about the *Salmonella* contamination, and the safety risks with human consumption of *Salmonella* contaminated food, Defendant nevertheless concealed and failed to disclose the defective nature of the Jif® peanut butter products to Plaintiff and Class Members at the time of purchase.

---

[12] *Questions and Answers*, CDC, 2022 https://www.cdc.gov/salmonella/general/index.html (last visited May 26, 2022).

139.  Defendant had a duty to disclose the *Salmonella* contamination because it:

a.  Had exclusive and/or far superior knowledge of the defect and access to the facts;

b.  Knew the facts were not known or reasonably discoverable to Plaintiff and Members of the Class;

c.  Concealed the facts and defect to Plaintiff and Class Members;

d.  Continued to manufacture, produce, distribute and sell the defective Jif® peanut butter products, while purposefully withholding material facts from Plaintiff and Class Members that would have prevented Plaintiff and Class Members from purchasing the product.

140.  In failing to disclose the material facts to Plaintiff and Members of the Class, Defendant intended to hide from Plaintiff and the Class that they were purchasing and consuming Jif® peanut butter products with harmful defects that was unfit for human use, and thus acted with scienter and/or intent to defraud.

141.  These omitted and concealed facts are material because if Plaintiff and Class Members had known of the defect, then they would not have purchased the Jif® peanut butter products or would have paid less for them. Indeed, Plaintiff and Class Members trusted Defendant to manufacture, sell, distribute, and produce peanut butter that was safe and fit for human consumption or to not put into the stream of commerce peanut butter that was unfit for human consumption.

142.  Defendant concealed and suppressed these material facts in order to mislead Plaintiff, Class Members, and the consuming public into believing that the Jif® peanut butter products were safe and fit for human consumption, as reasonably expected by consumers.

143.    Plaintiff and Class Members were unaware of these material facts and would not have purchased the Jif® peanut butter product had they known.

144.    Because of the concealment of the *Salmonella* contamination within the Jif® peanut butter products, Plaintiff and Class Members purchased the Jif® peanut butter product which were subsequently recalled. As a direct result of unknowingly purchasing Jif® peanut butter products contaminated with *Salmonella*, Plaintiff and Class Members suffered an economic loss.

145.    Accordingly, Defendant is liable for Plaintiff's and Class Member's damages in an amount to be determined at trial. Plaintiff and Class Members are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT X
## Unjust Enrichment

146.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

147.    Plaintiff brings this Claim against Defendant on behalf of himself and all Class Members.

148.    Plaintiff, and Class Members, conferred benefits on Defendant in the form of monies paid to purchase Defendant's *Salmonella* contaminated and worthless Jif® peanut butter products.

149.    Defendant voluntarily accepted and retained this benefit.

150.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Jif® peanut butter products unfit for human consumption, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

151.    Defendant received benefits in the form of revenues from purchases of the Jif®
peanut butter products to the detriment of Plaintiff, and Class Members, because Plaintiff, and
members of the Class, purchased Jif® peanut butter products that were not what they bargained
for and were not safe and effective, as claimed.

152.    Defendant has been unjustly enriched in retaining the revenues derived from the
purchases of the Jif® peanut butter products by Plaintiff and Members of the Class. Retention of
those monies under these circumstances is unjust and inequitable because the *Salmonella*
contamination caused injuries to Plaintiff and Class Members as they would not have purchased
the Jif® peanut butter products had they known that it was contaminated by *Salmonella*.

153.    Because Defendant's retention of the non-gratuitous benefits conferred on them by
Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff
and Class Members for its unjust enrichment, as ordered by the Court.

## COUNT XI
## Punitive Damages

154.    Plaintiff incorporates by reference all preceding allegations as though fully set forth
herein.

155.    Plaintiff brings this count on behalf of himself and the Class.

156.    Defendant knew or should have known that the Jif® peanut butter products were
contaminated with *Salmonella* and thereby unfit for human consumption.

157.    Defendant failed to disclose these facts to the consuming public, including Plaintiff
and Class Members.

158.    Defendant risked the safety of recipients of their products, including Plaintiff and
Class members, when Defendant knew of the *Salmonella* contamination with the Jif® peanut

butter products and suppressed this knowledge from the general consuming public, including Plaintiff and Class Members.

159.   Defendant made the conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of its *Salmonella* contaminated Jif® peanut butter products, despite knowing that the product was defective.

160.   Defendant knew or should have known that this conduct would result in injury or damage.

161.   The J.M. Smucker's Company's intentional, reckless, fraudulent, and malicious failure to disclose information regarding the health and safety risks of consuming the contaminated Jif® peanut butter products deprived Plaintiff and Class Members the necessary information to enable them to weigh the true risks of consuming the contaminated Jif® peanut butter products against their benefits.

162.   Defendant acted with wanton and reckless conscious indifference and utter disregard of the consequences of their actions upon the health, safety and rights of others, including Plaintiff and Class members.

163.   As a direct and proximate result of Defendant's conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff and Class members, Plaintiff and Class members have suffered severe and permanent economic injuries as set forth above. Defendant's outrageous conduct warrants an award of punitive damages.

164.   The aforesaid conduct of The J.M. Smucker's Company was committed with knowing, conscious, and deliberate disregard for the rights and safety of patients, including Plaintiff and Class members, thereby entitling Plaintiff and Class members to punitive damages in

an amount appropriate to punish The J.M. Smucker's Company and deter them from similar conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully request that this Court:

A. Certify the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the members of the Class about the pendency of this action;

C. Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D. Award pre-judgment and post-judgment interest;

E. Grant appropriate injunctive and/or declaratory relief;

F. Award reasonable attorney's fees and costs; and

G. Grant such further relief that this Court deems appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury in this action of all issues so triable.

Respectfully Submitted,

Dated: May 26, 2022                    /s/ Andrew S. Baker
                                       Andrew Baker
                                       The Baker Law Group
                                       107 S. High Street
                                       Suite 400
                                       Columbus, OH 43215
                                       andrew.baker@bakerlawgroup.net

                                       -AND-

                                       Roy T. Willey, IV
                                       Paul Doolittle
                                       Blake G. Abbott
                                       Poulin | Willey | Anastopoulo
                                       32 Ann Street
                                       Charleston, SC 29403
                                       roy@akimlawfirm.com
                                       paul@akimlawfirm.com
                                       blake@akimlawfirm.com

                                       **ATTORNEYS FOR PLAINTIFF AND
                                       PROPOSED CLASS**