# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **Naythan A. Ward, John Kraljevich, Joe Pisciotti, Cameron Bopp**, and **Tyneisha Ferguson**, individually and on behalf of all others similarly situated, | Case No. 5:22-cv-00885-JRA |
| Plaintiffs, | **Defendant The J. M. Smucker Company's Memorandum of Law in Support of its Motion to Dismiss and Strike Plaintiffs' Consolidated Class Action Complaint** |
| v. | Honorable John R. Adams |
| **The J. M. Smucker Company**, | Oral Argument Requested |
| Defendant. | This Document Relates to All Matters |

Ronald Y. Rothstein (*pro hac vice*)
Sean H. Suber (*pro hac vice*)
Thomas F. McAndrew (*pro hac vice*)
Annie R. Steiner (*pro hac vice*)
Alexander W. Kontopoulos (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
RRothste@winston.com
SSuber@winston.com
TMcAndrew@winston.com
ASteiner@winston.com
AKontopoulos@winston.com

*Counsel for Defendant*
*The J. M. Smucker Company*

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

Statement of Issues to be Decided.............................................................................. xi

Summary of the Argument ......................................................................................... xii

Background ...................................................................................................................... 1

Argument .......................................................................................................................... 3

I.     Plaintiffs lack standing under Rule 12(b)(1)...................................................... 3

       A.    Defendant's recall and its refund offer moot Plaintiffs' claims............................. 4

       B.    Plaintiffs fail to plausibly allege an injury-in-fact caused by Defendant............... 6

       C.    Plaintiffs also lack standing to seek injunctive relief................................. 7

II.    Plaintiffs fail to state a claim under Rules 12(b)(6) and 9(b). ........................... 9

       A.    Plaintiffs fail to plead several claims with particularity under Rule 9(b). ........... 10

           1.    Plaintiffs fail to allege a deceptive practice or intent, as required for the Illinois Plaintiffs and Subclass's ICFA claim. [Count XII]...................... 11

           2.    A statutory exemption bars the MCPA claim brought on behalf of the Michigan Plaintiff and Subclass. [Count XIII] ......................................... 13

           3.    Plaintiffs fail to allege a duty to speak or an affirmative act of concealment, defeating the fraudulent concealment claim. [Count IX] ... 14

           4.    Punitive damages are not a separate cause of action and, even if viable as such, Plaintiffs' allegations fail to state a claim. [Count XI].................... 16

       B.    The remaining claims lack well-pleaded factual allegations to state a claim. ....... 17

           1.    The economic loss doctrine bars Plaintiffs from seeking recovery in tort for an allegedly defective product. [Counts II, III, IV, V, VI, VII, VIII, and IX] ................................................................................................. 17

           2.    Plaintiffs' SCUTPA claim suffers from multiple fatal defects. [Count XIV] ....................................................................................................... 18

           3.    Plaintiffs fail to state a breach of warranty claim. [Counts I, II, and VI] . 19

           4.    Plaintiffs' product liability allegations, whether in negligence or in strict liability, fail to state a claim. [Counts III, IV, V, VII, and VIII] .............. 21

               a.    Plaintiffs fail to plausibly allege a duty to warn. [Counts IV and VII]............................................................................................ 22

   b.  Plaintiffs fail to plausibly allege negligent conduct. [Counts III & V] ...................................................................................... 24

   c.  Plaintiffs' negligence claims are preempted and make no sense in any event. [Counts III & V] ........................................................ 24

   d.  Plaintiffs' design defect claims are fatally flawed. [Counts V, VIII] .......................................................................................... 25

  5.  Plaintiffs' unjust enrichment claim suffers from multiple pleading defects, requiring dismissal. [Count X] ................................................. 26

III.  The Court should strike the nationwide class allegations under Rule 12(f) or 23(b). ...... 28

**Conclusion** ............................................................................................................. **30**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Medtronic, Inc.*,
  209 F. Supp. 3d 994 (S.D. Ohio 2016) ..................................................................25

*Abazari v. Rosalind Franklin Univ. of Med. and Sci.*,
  40 N.E.3d 264 (Ill. App. Ct. 2015) ......................................................................15

*Alexander v. Del Monte Corp.*,
  2011 WL 87286 (E.D. Mich. Jan.11, 2011).......................................................14, 25

*AP Alternatives, LLC v. Rosendin Elec., Inc.*,
  2020 WL 2526957 (N.D. Ohio May 18, 2020).......................................................27

*In re Aqua Dots Prods. Liab. Litig.*,
  270 F.R.D. 377 (N.D. Ill. 2010), *aff'd*, 654 F.3d 748 (7th Cir. 2011)...............................27, 30

*Arnott v. FCA, US LLC*,
  2020 WL 6918621 (D.S.C. Nov. 24, 2020)............................................................21

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*,
  502 F.3d 545 (6th Cir. 2007) ...............................................................................9

*Avendt v. Covidien*,
  262 F. Supp. 3d 493 (E.D. Mich. 2017).........................................................21, 22, 23

*B&P Process Equip. & Sys., LLC v. Applied Indus. Techs., Inc.*,
  2016 WL 67580 (E.D. Mich. Jan. 6, 2016)...........................................................15, 16

*Bakopoulos v. Mars Petcare US, Inc.*,
  592 F. Supp. 3d 759 (N.D. Ill. 2022) ...............................................................20, 21

*Bakshi v. Avis Budget Grp., Inc.*,
  2022 WL 704944 (E.D. Mich. Mar. 8, 2022) .........................................................16

*Bd. of Educ. of City of Chicago v. A, C & S, Inc.*,
  546 N.E.2d 580 (Ill. 1989)..................................................................................26

*Bechtel v. Fitness Equip. Servs.*,
  339 F.R.D. 462 (S.D. Ohio 2021) ........................................................................29

*Bensenberg v. FCA US LLC*,
  31 F.4th 529 (7th Cir. 2022) ...............................................................................26

*Benson v. Fannie May Confections Brands, Inc.*,
  2018 WL 1087639 (N.D. Ill. 2018) ..................................................9

*In re Boeing 737 MAX Pilots Litig.*,
  2022 WL 16553025 (N.D. Ill. Oct. 31, 2022)................................11, 18

*Bragg v. Hi-Ranger, Inc.*,
  462 S.E.2d 321 (S.C. Ct. App. 1995)...............................................26

*Brown v. Whirlpool Corp.*,
  996 F. Supp. 2d 623 (N.D. Ohio 2014).............................................16

*Camasta v. Jos. A Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) .....................................................10, 11

*Carrier Corp. v. Outokumpu Oyj*,
  673 F.3d 430 (6th Cir. 2012) .........................................................16

*Castillo v. Unilever U.S., Inc.*,
  2022 WL 17976163 (N.D. Ill. Dec. 28, 2022).............................9, 11, 12

*Cerretti v. Whole Foods Mkt. Grp., Inc.*,
  2022 WL 1062793 (N.D. Ill. Apr. 8, 2022) .......................................17

*Cervelli v. Thompson/ Ctr. Arms*,
  183 F. Supp. 2d 1032 (S.D. Ohio 2002) ...........................................23

*Ciraci v. J. M. Smucker Co.*,
  2022 WL 1170421 (N.D. Ohio Apr. 20, 2022) (Adams, J.) ....................9

*Civic Fed. Sav. Bank v. Hanover Ins. Co.*,
  1992 WL 188409 (N.D. Ill. Jul. 29, 1992)........................................10

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) .........................................................27

*Cohen v. Subaru of Am., Inc.*,
  2022 WL 714795 (D.N.J. Mar. 10, 2022).........................................18

*Colley v. Proctor & Gamble Co.*,
  2016 WL 5791658 (S.D. Ohio Oct. 4, 2016)......................................28

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
  2010 WL 3883439 (N.D. Ga. Sep. 29, 2010) .....................................22

*Connick v. Suzuki Motor Co., Ltd.*,
  675 N.E.2d 584 (Ill. 1996)............................................................19

*Corwin v. Conn. Valley Arms, Inc.*,
   74 F. Supp. 3d 883 (N.D. Ill. 2014) ...............................................................21, 24

*Counts v. Gen. Motors, LLC*,
   2022 WL 2079757 (E.D. Mich. Jun. 9, 2022) ........................................................15

*Hill ex rel. Covington v. Briggs & Stratton*,
   856 F.2d 186 (table), 1988 WL 86620 (4th Cir. 1988).....................................22, 23

*Creech v. Emerson Climate Techs., Inc.*,
   2015 WL 13898761 (S.D. Ohio Jul. 23, 2015)........................................................26

*Custom Pack Sols., Inc., v. Great Lakes Healthcare Purchasing Network, Inc.*,
   2018 WL 1020671 (Mich. Ct. App. Feb. 22, 2018)................................................26

*Cyr v. Ford Motor Co.*,
   2019 WL 7206100 (Mich. Ct. App. Dec. 26, 2019) ...............................................14

*Dema v. Tenet Physician Servs.-Hilton Head, Inc.*,
   678 S.E.2d 430 (S.C. 2009) ....................................................................................19

*Dewick v. Maytag Corp.*,
   324 F. Supp. 2d 894 (N.D. Ill. 2004) ......................................................................17

*Donelson v. Am. Fin. Servs., Inc.*,
   999 F.3d 1080 (8th Cir. 2021) ...........................................................................29, 30

*Duvall v. TRW*,
   578 N.E.2d 556 (Ohio 1991)....................................................................................30

*Ethox Chem., LLC v. Coca-Cola Co.*,
   2013 WL 41001 (D.S.C. Jan. 3, 2013)...............................................................18, 19

*Flores v. FCA US LLC*,
   2020 WL 7024850 (E.D. Mich. Nov. 30, 2020) .......................................................5

*In re Ford Motor Ignition Switch Prods. Liab. Litig.*,
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ..............................................................7

*Forsher v. J.M. Smucker Co.*,
   2020 WL 1531160 (N.D. Ohio Mar. 31, 2020) (Adams, J.).......................... *passim*

*Gilbert v. DaimlerChrysler Corp.*,
   685 N.W.2d 391 (Mich. 2003)..................................................................................16

*Gilmore v. First Am. Title Ins. Co.*,
   2009 WL 2960703 (E.D. Mich. Sept. 11, 2009).......................................................10

*Goddard v. Stabile*,
    924 N.E.2d 868 (Ohio Ct. App. 2009) ...................................................................15

*Gregorio v. Ford Motor Co.*,
    522 F. Supp. 3d 264 (E.D. Mich. 2021)...............................................................20

*Grendell v. Ohio Sup. Ct.*,
    252 F.23d 828 (6th Cir. 2001) ................................................................................8

*Guajardo v. Skechers USA, Inc.*,
    503 F. Supp. 3d 746 (C.D. Ill. 2020) ...................................................................27

*Hadley v. Chrysler Grp., LLC*,
    624 F. App'x 374 (6th Cir. 2015) ...........................................................................5

*Hale v. Enerco Grp.*,
    288 F.R.D. 139 (N.D. Ohio 2012) ..................................................................29, 30

*Hamilton v. Gen. Mills, Inc.*,
    2016 WL 4060310 (D. Or. Jul. 27, 2016)...................................................2, 6, 8, 16

*Harrell v. BMW of N. Am., LLC*,
    517 F. Supp. 3d 527 (D.S.C. 2021)..........................................................14, 15, 17

*Hartford Accident & Indem. Co. v. FFP Holdings LLC*,
    490 F. Supp. 3d 1226 (N.D. Ohio 2020) ..............................................................28

*Haskin v. Rhodes*,
    2018 WL 3660707 (S.C. Ct. App. 2018) ..............................................................26

*Honeycutt v. Thor Motor Coach, Inc.*,
    2022 WL 17340471 (E.D. Mich. Nov. 30, 2022) .................................................18

*Jablonski v. Ford Motor Co.*,
    955 N.E.2d 1138 (Ill. 2011)..................................................................................24

*Johnson v. FCA US LLC*,
    555 F. Supp. 3d 488 (E.D. Mich. 2021)................................................................28

*Jones v. Lubrizol Advanced Materials, Inc.*,
    559 F. Supp. 3d 569 (N.D. Ohio 2021).................................................................18

*Jones v. Lubrizol Advanced Materials, Inc.*,
    583 F. Supp. 3d 1045 (N.D. Ohio 2022)..........................................................28, 29

*Kallai v. Jatola Homes, LLC*,
    2021 WL 5961626 (N.D. Ohio Dec. 16, 2021) ......................................................3

*Kaminski v. Libman Co.*,
    748 F. App'x 1 (6th Cir. 2018) ...................................................................24

*Kirsten v. W.M. Barr & Co., Inc.*,
    1997 WL 136328 (N.D. Ill. Mar. 19, 1997)...............................................23

*Holland ex rel. Knox v. Morbark, Inc.*,
    754 S.E.2d 714 (S.C. Ct. App. 2014).........................................................24

*Kolano v. Bank of Am., NA*,
    2014 WL 1117862 (N.D. Ohio Mar. 19, 2014) (Adams, J.)........................2

*Kondash v. Kia Motors Am., Inc.*,
    2016 WL 11246421 (S.D. Ohio Jun. 24, 2016) .........................................23

*Kremers v. Coca-Cola Co.*,
    712 F. Supp. 2d 759 (S.D. Ill. 2010).........................................................13

*Kyles v. Keefe Commissary Network, LLC*,
    2015 WL 1637466 (E.D. Mich. Apr. 13, 2015).........................................14

*Lum v. Mercedes Benz USA, LLC*,
    2006 WL 1174228 (N.D. Ohio Apr. 28, 2006)..........................................16

*In re MacBook Keyboard Litig.*,
    2019 WL 6465285 (N.D. Cal. Dec. 2, 2019) ...............................................2

*Madden v. Petland Summerville, LLC*,
    2022 WL 2806408 (D.S.C. Jul. 18, 2022) .................................................18

*McKee v. Gen. Motors LLC*,
    376 F. Supp. 3d 751 (E.D. Mich. 2019).....................................................26

*McKinney v. Bayer Corp.*,
    744 F. Supp. 2d 733 (N.D. Ohio 2010)......................................................21

*McKinney v. Microsoft Corp.*,
    2011 WL 13228141 (S.D. Ohio May 12, 2011) ...............................17, 26

*In re McNeil Consumer Healthcare*,
    877 F. Supp. 2d 254 (E.D. Pa. 2013) ...........................................................7

*McRee v. Dick's Sporting Goods, Inc.*,
    2017 WL 5201525 (D.S.C. Nov. 9, 2017) .................................................24

*Meaunrit v. Pinnacle Foods Grp., LLC*,
    2010 WL 1838715 (N.D. Cal. May 5, 2010) ...............................................6

*MedChoice Fin., LLC v. ADA All. Data Sys., Inc.*,
    957 F. Supp. 2d 665 (S.D. Ohio 2012) ...................................................................18

*Mellen v. Lane*,
    659 S.E.2d 236 (S.C. 2008) ...................................................................................17

*MetroPCS v. Devor*,
    215 F. Supp. 3d 626 (N.D. Ill. 2016) .....................................................................26

*Mitchell v. City of Warren*,
    803 F.3d 223 (6th Cir. 2015) .................................................................................22

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
    895 F.2d 266 (6th Cir. 1990) ...................................................................................3

*Montgomery v. Kraft Foods Glob., Inc.*,
    822 F.3d 304 (6th Cir. 2016) .................................................................................20

*Murphy v. Proctor & Gamble Co.*,
    695 F. Supp. 2d 600 (E.D. Mich. 2010) .................................................................17

*In re N. Dist. of CA, Dalkon Shield IUD Prods. Liab. Litig.*,
    693 F.2d 847 (9th Cir. 1982) .................................................................................30

*Nationwide Mut. Fire Ins. Co., v. Gen. Motors Corp.*,
    415 F. Supp. 2d 769 (N.D. Ohio 2006) ..............................................................9, 29

*North Carolina v. Rice*,
    404 U.S. 244 (1975) .................................................................................................4

*O'Neil v. Simplicity, Inc.*,
    574 F.3d 501 (8th Cir. 2009) ...................................................................................6

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) .............................................................................28, 29

*In re Plum Baby Food Litig.*,
    2022 WL 16552786 (D.N.J. Oct. 31, 2022) .............................................................9

*In re Porsche Cars N. Am., Inc.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ..................................................................12

*Porter v. Cub Cadet LLC*,
    166 N.E.3d 201 (Ill. App. Ct. 2020) ......................................................................23

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
    683 F.3d 239 (6th Cir. 2012) .................................................................................10

*Rosipko v. FCA US, LLC*,
   2015 WL 8007649 (E.D. Mich. Dec. 7, 2015) ....................................................10

*Sandviks v. PhD Fitness, LLC*,
   2018 WL 1393745 (D.S.C. Mar. 20, 2018) ........................................................20

*Sapp v. Ford Motor Co.*,
   687 S.E.2d 47 (S.C. 2009) ..................................................................18, 26

*Shaker v. Champion Petfoods USA Inc.*,
   2022 WL 4002889 (E.D. Mich. Sep. 1, 2022).........................................13, 14, 18

*Sharp v. FCA US LLC*,
   2022 WL 14721245 (E.D. Mich. Oct. 25, 2022) ..............................................4, 5, 6

*Siegel v. Shell Oil Co.*,
   612 F.3d 932 (7th Cir. 2010) ...................................................................13

*Singleton v. Stokes Motors, Inc.*,
   595 S.E.2d 461 (S.C. 2004) ...................................................................19

*Solis v. Emery Fed. Credit Union*,
   459 F. Supp. 3d 981 (S.D. Ohio 2020) .........................................................10

*Spector v. Mondelez Int'l, Inc.*,
   178 F. Supp. 3d 657 (N.D. Ill. 2016) ..........................................................13

*St. Clair v. Kroger Co.*,
   581 F. Supp. 2d 896 (N.D. Ohio 2008)..........................................................19

*Stewart v. Thrasher*,
   610 N.E.2d 799 (Ill. App. Ct. 1993) ...........................................................15

*Sugasawara v. Ford Motor Co.*,
   2019 WL 3945105 (N.D. Cal. Aug. 21, 2019) ...................................................6

*Sullivan Indus., Inc. v. Double Seal Glass Co., Inc.*,
   480 N.W.2d 623 (Mich. Ct. App. 1991) ........................................................26

*Szabo v. Bridgeport Machs.*,
   239 F.3d 672 (7th Cir. 2001) ..................................................................29

*TransUnion v. Ramirez*,
   131 S. Ct. 2190 (2021)..........................................................................8

*Traxler v. PPG Indus., Inc.*,
   158 F. Supp. 3d 607 (N.D. Ohio 2016)..........................................................20

*TreeHouse Foods, Inc. v. SunOpta Grains & Foods Inc.*,
    2019 WL 1429337 (N.D. Ill. Mar. 29, 2019) ........................................................17

*Tudor v. Jewel Food Stores, Inc.*,
    681 N.E.2d 6 (Ill. App. Ct. 1997) ......................................................................12

*Wach v. Prairie Farms Dairy, Inc.*,
    2022 WL 1591715 (N.D. Ill. May 19, 2022) ......................................................25

*Wallace v. ConAgra Foods, Inc.*,
    747 F.3d 1025 (8th Cir. 2014) ...........................................................................22

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
    684 F. Supp. 2d 942 (N.D. Ohio 2009) ...............................................................10

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
    681 F.3d 1208 (10th Cir. 2012) ........................................................................4, 5

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act ...................................10

Michigan Compiled Laws ............................................................................... *passim*

Ohio Revised Code ..................................................................................17, 26

South Carolina Code of Laws ...............................................................................19

**Other Authorities**

21 C.F.R. Part 7 ..................................................................................................4

FDA, *J. M. Smucker Co. Issues Voluntary Recall* (May 20, 2022) (last visited
    Feb. 3, 2023), *available at* https://www.fda.gov/safety/recalls-market-
    withdrawals-safety-alerts/j-m-smucker-co-issues-voluntary-recall-select-jifr-
    products-sold-us-potential-salmonella ..........................................................2, 22, 24

FDA, *Outbreak Investigation of Salmonella: Peanut Butter* (last updated July 27,
    2022), *available at* https://www.fda.gov/food/outbreaks-foodborne-
    illness/outbreak-investigation-salmonella-peanut-butter-may-2022 ...........................2, 3, 4, 8

*Jif® Peanut Butter Recall Information* (last visited Feb. 1, 2023), *available at*
    https://www.jif.com/recall ...........................................................................3

CDC, *Salmonella Outbreak Linked to Peanut Butter* (last updated July 27, 2022),
    *available at* https://www.cdc.gov/salmonella/senftenberg-05-
    22/index.html?fbclid=IwAR1MnI15sgv_OwryFygCTm5DlrVPypnzZqDNEd
    nzB03rlhwlrKzg7oKM7gI ...............................................................................2

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the doctrine of prudential mootness requires dismissal of the claims.

2.      Whether the claims must be dismissed because Plaintiffs lack an injury in fact that is fairly traceable to Defendant's conduct.

3.      Whether Plaintiffs' request for injunctive relief must be dismissed because they lack standing to pursue that remedy.

4.      Whether claims that sound in fraud must be dismissed because the allegations fail to state with particularity the circumstances constituting fraud.

5.      Whether the claims asserted against Defendant alleging breaches of express and implied warranties, failures to warn, a product defect, fraud, negligence, unjust enrichment, punitive damages, and violations of state consumer protection laws must be dismissed for failing to state a claim that is plausible.

6.      Whether the Court should strike Plaintiffs' nationwide class allegations due to variations in the laws of the fifty states.

## SUMMARY OF THE ARGUMENT

Plaintiffs bring claims for products liability under the guise of false advertising, resulting in a fundamental disconnect between their allegations and the causes of action that they bring. Their allegations boil down to dissatisfaction from alleged economic losses due to Defendant's voluntary recall of products that Plaintiffs had already purchased. No Plaintiff alleges that the products they personally bought exhibited a defect, nor can they point to a statement by Defendant that is rendered false or misleading by *potential* Salmonella contamination. This Court should dismiss the Consolidated Class Action Complaint ("CAC") with prejudice for several reasons.

First, Plaintiffs lack standing because they fail to allege an injury-in-fact caused by Defendant's conduct. Plaintiffs only allege an economic harm, and Defendant's refund program moots that alleged injury. Any economic harm is due to Plaintiffs' choices—not seeking a refund, incurring consequential expenses—rather than Defendant's conduct. Separately, Plaintiffs do not—and cannot—allege a threat of future injury, as required for injunctive relief. Without standing for their various claims, the Court should dismiss the CAC with prejudice.

Second, Plaintiffs' allegations fail to state a claim on the merits. Plaintiffs' conclusory allegations cannot satisfy the requirements of Rule 12(b)(6), let alone Rule 9(b). Plaintiffs' failure to allege that the products they personally bought exhibited any defect that caused them a personal injury dooms their tort claims under various state laws. Plaintiffs also fail to allege privity or pre-litigation notice, as required for their warranty claims. Thus, if the Court reaches the merits, it should dismiss the CAC in its entirety with prejudice.

Finally, the Court should strike the nationwide class allegations. Variations in the laws of the fifty states renders the requested nationwide class unmanageable. This is a legal issue that Plaintiffs cannot cure with an amended complaint or further discovery.

## BACKGROUND

This case arises out of Defendant The J. M. Smucker Company's May 2022 voluntary recall of select Jif® peanut butter products with lot codes 1274425–2140425 (the "Products") due to potential Salmonella contamination. Plaintiffs Naythan A. Ward, John Kraljevich, Joe Pisciotti, Cameron Bopp, and Tyneisha Ferguson filed this CAC on behalf of themselves and "all other purchasers of Jif® peanut butter products with lot codes 1274425 – 2140425 with the first seven numbers ending with '425.'" CAC ¶ 9. Each Plaintiff contends that they bought the Products, and that they were allegedly "exposed to Defendant's advertisements and marketing representing Jif® peanut butter products as healthy, uncontaminated, and safe for human consumption" and so they "reasonably believed that the [Products] would be safe and healthy and not contaminated with Salmonella." *Id.* ¶¶ 35–37. None of the Plaintiffs individually allege that they ever saw, read, or relied on Defendant's alleged representations.

Plaintiffs assert claims for breach of express warranty [Count I], breach of implied warranty [Count II], negligence [Count III], negligent failure to warn [Count IV], negligent design defect [Count V], breach of the implied warranty of merchantability [Count VI], strict liability failure to warn [Count VII], strict liability design defect [Count VIII], fraudulent concealment [Count IX], unjust enrichment [Count X], punitive damages [Count XI], violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") [Count XII], violation of the Michigan Consumer Protection Act ("MCPA") [Count XIII], and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") [Count XIV]. Plaintiffs purport to bring Counts I through XI on behalf of a nationwide class, Count XII on behalf of an Illinois subclass, Count XIII on behalf of a Michigan subclass, and Count XIV on behalf of a South Carolina subclass. *Id.* ¶ 41.

Plaintiff Kraljevich, a South Carolina resident, allegedly bought a Jif® peanut butter product in April 2022 from Harris Teeter in Fort Mill, South Carolina (CAC ¶ 27); Plaintiff Bopp, a

South Carolina resident, allegedly bought a Jif® peanut butter product, but does not specify where or when he made this purchase (*id.* ¶ 28); Plaintiff Ward, a Michigan resident, allegedly bought a Jif® peanut butter product on February 20, 2022, from Meijer in Waterford, Michigan (*id.* ¶ 29); Plaintiff Pisciotti, an Illinois resident, allegedly bought a Jif® peanut butter product on March 18, 2022, from Sam's Club, but does not specify where he made this purchase (*id.* ¶ 31); and Plaintiff Ferguson, an Illinois resident, allegedly bought a Jif® peanut butter product in April 2022 that was recalled from Walmart or Amazon but does not state where she made this purchase (*id.* ¶ 30).

The CAC alleges that on May 20, 2022, Defendant, "in cooperation with the [FDA],"[1] voluntarily recalled the Products for *potential* Salmonella contamination. CAC ¶ 34. The CDC advised consumers to either throw the Products away, or "return them to where you bought them,"[2] and the FDA instructed consumers to "call or email [Defendant]" if they were "unsure what to do with [a] recalled product."[3] Defendant implemented a robust refund program to compensate those who bought a recalled product and submitted a short recall claim form. *See* **Exhibit A**, Jif Product Recall Claim Form (May 26, 2022).[4] Following an investigation and multiple months without a case of Salmonella, the FDA closed its investigation into Defendant, and the CDC "declare[d] the

---

[1] FDA, *J. M. Smucker Co. Issues Voluntary Recall* (May 20, 2022) (last visited Feb. 3, 2023), *available at*  https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/j-m-smucker-co-issues-voluntary-recall-select-jifr-products-sold-us-potential-salmonella (cited in CAC ¶¶ 5–6).

[2] CDC, *Salmonella Outbreak Linked to Peanut Butter* (last updated July 27, 2022), *available at* https://www.cdc.gov/salmonella/senftenberg-05-22/index.html?fbclid=IwAR1MnI15sgv_Ow-ryFygCTm5DlrVPypnzZqDNEdnzB03rlhwlrKzg7oKM7gI (cited in CAC ¶ 22).

[3] *See* FDA, *Outbreak Investigation of Salmonella: Peanut Butter* (last updated July 27, 2022), *available at*  https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-but-ter-may-2022 (cited in CAC ¶¶ 20–21).

[4] The Court may properly take notice of the exhibit both because it "does not rebut, challenge or contradict anything in the [CAC]," and, as a document concerning Defendant's recall, it is "referred to" in the CAC, and is "central to Plaintiff's claim." *Kolano v. Bank of Am., NA*, 2014 WL 1117862, at *2 (N.D. Ohio Mar. 19, 2014) (Adams, J.) (noting that either of those circumstances, standing alone, permits judicial notice). *See also Hamilton v. Gen. Mills, Inc.*, 2016 WL 4060310, at *3 (D. Or. Jul. 27, 2016) (taking notice of articles from defendant's website regarding recall that was central to plaintiff's allegations); *In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *5–6 (N.D. Cal. Dec. 2, 2019) (same).

outbreak over" on July 27, 2022.[5] Even so, consumers can still contact Defendant to participate in the refund program.[6] No Plaintiff alleges that they contacted Defendant or sought a refund.

The CAC further alleges that the FDA identified 16 cases of Salmonella as of May 25, 2022; of those, nine individuals reported consuming the Products. CAC ¶ 23. Even so, the CAC asserts that *all* the Products contained Salmonella. *Id.* ¶¶ 6, 33. And therefore Plaintiffs, relying on that assertion, seek "damages and injunctive relief for their injuries, including their out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the Jif® peanut butter products, personal injuries, emotional distress, and annoyance." *Id.* ¶ 9. At the same time, *none* of the Plaintiffs allege that they consumed the Products, (*see id.* ¶ 84), let alone became ill from a Salmonella infection.

## ARGUMENT

### I.    Plaintiffs lack standing under Rule 12(b)(1).

Plaintiffs' claims fail from the start because they lack standing. "[T]he plaintiff has the burden of proving jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Courts must "consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Id.* For 12(b)(1) motions, a court "takes the allegations in the complaint as true, which is a similar safeguard [to Rule] 12(b)(6)." *Kallai v. Jatola Homes, LLC*, 2021 WL 5961626, at *2 (N.D. Ohio Dec. 16, 2021).

Plaintiffs allege economic injuries that do not confer standing and Defendant's refund offer moots the alleged losses associated with payment for the Products. Independently, Plaintiffs'

---

[5] *See* FDA, *Outbreak Investigation of Salmonella: Peanut Butter* (last updated July 27, 2022), *available at* https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022 (cited in CAC ¶¶ 20–21).

[6] *See Jif® Peanut Butter Recall Information*, *available at* https://www.jif.com/recall (last visited Feb. 1, 2023); *see also supra* note 4 (citing cases that took judicial notice of recall communications on website).

voluntary choices to incur consequential costs and abstain from the refund program defeats the traceability requirement. Lastly, Plaintiffs fail to plead an imminent future injury for an injunction.

### A.    Defendant's recall and its refund offer moot Plaintiffs' claims.

To start, Plaintiffs' claims are moot. "If events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits, equity may demand not decision but dismissal." *Sharp v. FCA US LLC*, 2022 WL 14721245, at *6 (E.D. Mich. Oct. 25, 2022) (quoting *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012)). "The doctrine of mootness is a corollary to the 'cases' and 'controversies' requirement of Article III," which "[m]ost Circuits, including the Sixth, have adopted." *Id.* at *5–6 (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990); *Greenbaum v. EPA*, 370 F.3d 527, 534–35 (6th Cir. 2004)). "Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions," which "derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *North Carolina v. Rice*, 404 U.S. 244, 246 (1975).

Here, Defendant initiated a voluntary recall overseen by the FDA, which provides full relief and renders the claims moot. Under 21 C.F.R. Part 7, when manufacturers initiate a voluntary recall, "the Food and Drug Administration [can] monitor recalls and assess the adequacy of a firm's efforts in recall." 21 C.F.R. § 7.40(a). Beyond developing a recall strategy (*id.* § 7.42) and regulating the time and content of public notices (*id.* §§ 7.49, 7.50, 7.53), the FDA also conducted an investigation to address "future prevention efforts."[7] The FDA's active role "bear[s] special gravity […] 'because they are generally trustworthy' and 'because affording a judicial remedy on top

---

[7] The FDA has stated that it is "preparing a report to discuss findings and provide information to assist in future prevention efforts." *See* FDA, *Outbreak Investigation of Salmonella: Peanut Butter* (last updated July 27, 2022), *available at* https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022 (cited in CAC ¶¶ 20–21).

of one already promised by a coordinate branch risks needless inter-branch disputes […] and the duplicative expenditure of finite public resources.'" *Sharp*, 2022 WL 14721245, at *6–7 (quoting *Winzler*, 681 F.3d at 1211). Indeed, as the Tenth Circuit explained when confronting analogous facts, "to find this case moot, we need (and do) only take notice of the existence of filings with [a federal agency] purporting to identify a defect and announce a recall." *Winzler*, 681 F.3d at 1211. At that point, as here, an agency has assumed responsibility to remove the product from the market and address the cause of any issues a plaintiff may have. *See Sharp*, 2022 WL 14721245, at *6–7.

On top of the voluntary recall, Defendant offered full relief through a robust refund program that renders these claims moot. To find a claim moot, "a remedial promise always qualifies as one of the factors to be considered" because it is relevant to whether the "requested relief is needed." *Winzler*, 681 F.3d at 1211 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953)) (dismissing claim for injunctive relief); *see also Flores v. FCA US LLC*, 2020 WL 7024850, at *3–4 (E.D. Mich. Nov. 30, 2020) (dismissing claim for damages, rejecting argument that defendant must have a "statutory obligation" to provide relief in order to apply mootness). Defendant's promise of full relief means that "prolonging the litigation any longer would itself be inequitable," "even though it may still qualify as an Article III 'case or controversy.'" *Winzler*, 681 F.3d at 1210. This is particularly so when, as here, a plaintiff alleges injury in the form of reduced product value, since full relief is available, and permitting recovery on top of the refund program creates a "double-recovery windfall." *Sharp*, 2022 WL 14721245, at *8–9.

Plaintiffs have no well-pleaded facts to suggest that Defendant's voluntary recall and the FDA's investigation are deficient or that Defendant's refund program failed to provide them with a full remedy for their claims. Thus, this Court should dismiss the claims as prudentially moot. *See Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015) ("[P]laintiffs' assertion that

the [recall] may not be effective does not evidence an actual or imminent injury.").

**B.     Plaintiffs fail to plausibly allege an injury-in-fact caused by Defendant.**

Nor have Plaintiffs pleaded an injury traceable to Defendant's acts, as required to satisfy Article III. The alleged defect did not materialize in the Products Plaintiffs bought, and any alleged economic harm is due to each Plaintiff's voluntary choice not to seek relief through Defendant's refund program, not Defendant's conduct. "Plaintiffs must allege facts showing that they (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of . . . Defendants, and (3) that it is likely to be redressed by a favorable judicial decision." *Sharp*, 2022 WL 14721245, at *5. As explained, Defendant's refund program offered a remedy for the alleged economic harm of buying the Products. None of the Plaintiffs allege any facts to plausibly suggest personal injury or anything more than economic harm. *See* CAC ¶¶ 27–31 (alleging purchases); *id.* ¶ 84 (alleging they were "unable" to eat the Products). Without a non-economic injury, and given Defendant's refund program, Plaintiffs lack a cognizable injury-in-fact caused by Defendant's conduct.

Defendant's offer to compensate Plaintiffs through its refund program moots their alleged economic injuries and defeats causation. Plaintiffs do not allege that the alleged defect manifested in the Products they bought, making any claims of non-economic harm speculative. *See, e.g.*, *Meaunrit v. Pinnacle Foods Grp., LLC*, 2010 WL 1838715, at *3 (N.D. Cal. May 5, 2010) (no injury where plaintiffs bought but did not consume contaminated frozen pot pies); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503–04 (8th Cir. 2009) (no injury where alleged defect did not manifest in product plaintiff bought). Thus, Plaintiffs "do[] not allege any injury other than [their] reliance on [Defendant's] 'misrepresentation' to purchase the [product]," and the lost value of that product. *Hamilton*, 2016 WL 4060310, at *5. But "because [their] loss of $15.98 is mooted by [Defendant's] refund program, [they] do[] not have standing to sue." *Id.* at *5. The same is true where a refund permits consumers to replace the defective product. *See Sugasawara v. Ford Motor Co.*,

– 6 –

2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) ("If the post-recall remedy [products] perform as they would without the Defect, then it follows that the [product's] pre-defect values have likewise been restored."). Finding an economic injury on these facts requires "speculation [] as to the causal link between the behavior of a defendant and an injury of the plaintiff," and thus "no standing exists." *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 276–77 (E.D. Pa. 2013) (noting "plaintiffs have alleged facts that could demonstrate they are entitled to a refund"); *see also In re Ford Motor Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317, at *5 (D.N.J. Sept. 30, 1997) ("Nowhere in the complaint do plaintiffs describe what injury [they] have sustained that might require further compensation beyond the offer to [replace the product] free of charge.").

Plaintiffs lack well-pleaded facts to support non-economic harm, and those alleged injuries are not fairly traceable to Defendant's conduct. At various points, the CAC vaguely references damages in the form of "money spent to address symptoms and consequences of ingesting the contaminated Jif peanut butter products." *E.g.*, CAC ¶¶ 9, 60. **But no Plaintiff alleges that they ingested the Products**. In fact, Plaintiffs allege the opposite: they were "unable" to consume the Products. *See id.* ¶ 84. So, even if the Court accepted this allegation, Plaintiffs do not—and cannot—plausibly allege that those consequential damages are traceable to Defendant. Even if Plaintiffs took these steps upon learning of the recall, they "undertook these actions on their own and any costs associated with them are, therefore, not traceable to the defendants." *In re McNeil*, 877 F. Supp. 2d at 276. Thus, Plaintiffs' voluntary conduct upon learning of the recall—choosing to incur incidental costs and opting not to seek compensation from Defendant—negates both the injury-in-fact and the traceability requirements for Article III standing.

## C.    Plaintiffs also lack standing to seek injunctive relief.

Plaintiffs also have no risk of future harm. A plaintiff only has standing for injunctive relief if they have well-pleaded allegations that "the risk of harm is sufficiently imminent and

substantial." *TransUnion v. Ramirez*, 131 S. Ct. 2190, 2210 (2021). Importantly, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Grendell v. Ohio Sup. Ct.*, 252 F.23d 828, 832 (6th Cir. 2001) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983)). Thus, "where the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *See id.* (citing *Lyons*, 461 U.S. at 109). Plaintiffs do not allege any facts to satisfy this standard: nothing to suggest that repeat contamination is likely or imminent, and nothing to suggest that Plaintiffs would be personally exposed to that risk of harm in the future.

Plaintiffs' allegations of contamination at Defendant's Kentucky facility does not support standing for injunctive relief. There is no risk of harm because the FDA closed its investigation and the CDC declared the outbreak "over."[8] Plaintiffs merely allege an "isolated manufacturing mistake," and none of their allegations suggest a possibility or likelihood of future contamination. Other courts have dismissed requests for injunctive relief with prejudice on near-identical facts, concluding that they fail to plausibly allege a likely or imminent threat of harm where the only misconduct alleged is an isolated incident. *See, e.g.*, *Hamilton*, 2016 WL 4060310, at *5 (noting defendant's compliance with FDA during recall weighed against standing for injunctive relief). Thus, Plaintiffs cannot show a likelihood that they will be *harmed in a similar way*.

Moreover, Plaintiffs still fail to allege an imminent future harm to confer standing. Plaintiffs do not allege any facts to suggest that they will purchase the Products in the future. "Most courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiffs will or must purchase the product again in the future and be deceived, they cannot

---

[8] *See* FDA, *Outbreak Investigation of Salmonella: Peanut Butter* (last updated July 27, 2022), *available at* https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022 (cited in CAC ¶¶ 20–21).

meet the standing requirements for injunctive relief claims." *Benson v. Fannie May Confections Brands, Inc.*, 2018 WL 1087639, at *5 (N.D. Ill. 2018); *see also In re Plum Baby Food Litig.*, 2022 WL 16552786, at *9–10 (D.N.J. Oct. 31, 2022) ("[T]he Court 'must assume Plaintiffs will act rationally' by not purchasing a product they allege is misleadingly labelled.").

## II.    Plaintiffs fail to state a claim under Rules 12(b)(6) and 9(b).

If the Court finds that Plaintiffs have standing, this case should be dismissed because Plaintiffs fail to adequately state a claim under Rules 9(b) and 12(b)(6). Plaintiffs do not specify which state's common law they bring their nationwide class claims under so Defendant primarily focuses its arguments on the laws of the forum state (Ohio), and the laws of the states where named Plaintiffs reside. *See, e.g.*, *Castillo v. Unilever U.S., Inc.*, 2022 WL 17976163, at *2 (N.D. Ill. Dec. 28, 2022) (treating forum state's law as "representative"); *Nationwide Mut. Fire Ins. Co., v. Gen. Motors Corp.*, 415 F. Supp. 2d 769, 775 (N.D. Ohio 2006) (applying law of states where plaintiffs reside in product liability case). Also, as explained in Section III, Plaintiffs' nationwide class claims should be dismissed due to material differences in the substantive laws of the fifty states.

When ruling on a motion to dismiss under Rule 12(b)(6), a court considers whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ciraci v. J. M. Smucker Co.*, 2022 WL 1170421, at *1 (N.D. Ohio Apr. 20, 2022) (Adams, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The Court "need accept only the complaint's well-pleaded factual allegations as true," and the Court may disregard "'legal conclusions couched as factual allegations.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citing *Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018)). Thus, while not imposing the heightened particularity requirements of Rule 9(b), Plaintiffs must make sufficient "*factual* allegations […] to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (emphasis added).

### A.    Plaintiffs fail to plead several claims with particularity under Rule 9(b).

Plaintiffs rely on general averments of fraud in their pleadings, triggering Rule 9(b)'s heightened pleading standard. Rule 9(b) "requires a plaintiff to 'state with particularity the circumstances constituting fraud.' Courts have interpreted Rule 9(b) to require a plaintiff to plead 'the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.' In other words, a plaintiff must allege the 'who, what, when, where, and how of the alleged fraud.'" *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) (quoting *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). Rule 9(b) applies to all "[c]laims sounding in fraud," *Forsher v. J.M. Smucker Co.*, 2020 WL 1531160, at *3 (N.D. Ohio Mar. 31, 2020) (Adams, J.), including allegations of fraud based "upon an omission or failure to disclose." *Gilmore v. First Am. Title Ins. Co.*, 2009 WL 2960703, at *3 (E.D. Mich. Sept. 11, 2009). "Whether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law, on which we must defer to the state courts." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012). Thus, Rule 9(b) applies to the claims under Illinois and Michigan law [Counts XII–XIII], the claim for punitive damages [Count XI], and the fraudulent concealment claim [Count IX]. *See, e.g., Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (ICFA claim); *Rosipko v. FCA US, LLC*, 2015 WL 8007649, at *3–4 (E.D. Mich. Dec. 7, 2015) (MCPA claim); *Civic Fed. Sav. Bank v. Hanover Ins. Co.*, 1992 WL 188409, at *3 (N.D. Ill. Jul. 29, 1992) (punitive damages); *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 993 (S.D. Ohio 2020) (fraudulent concealment).

Plaintiffs fail to plead any fraud claim with particularity. Plaintiffs allege that Defendant made "affirmative representations" that the Products were "healthy," "uncontaminated," and "safe." CAC ¶ 35–36. Yet Plaintiffs do not quote or cite a statement from Defendant describing

the Products with those terms. That language does not appear in the two images from Defendant's website, (*id.* ¶¶ 2–3), nor on the images of the Products. *Id.* ¶¶ 27–31. This "high-level paraphrase" just "doesn't cut it" under Rule 9(b). *In re Boeing 737 MAX Pilots Litig.*, 2022 WL 16553025, at *26 (N.D. Ill. Oct. 31, 2022) ("Plaintiffs cite only to their own gloss on the general content of [defendant's] representations. When it comes to Rule 9(b), a thick coat of gloss won't do. A complaint needs to point to what the alleged fraudster actually said."); *see also Castillo*, 2022 WL 17976163, at *2–3 (finding alleged representations about product quality "do not suggest the absence of [an ingredient] or relate to safety in any way"). More importantly, Plaintiffs do not specify when and where they encountered these alleged misrepresentations—or how they were deceived— thus failing the most basic requirements under Rule 9(b). *See Forsher*, 2020 WL 1531160, at *3– 4 (Adams, J.) ("[G]eneralities do not satisfy the pleading standard for fraud."); *Castillo*, 2022 WL 17976163, at *3 ("[T]he complaint does not allege that they *read* the website before purchasing the products [; therefore], the website cannot have deceived them.").

Because of these failures, Plaintiffs' substantive claims are defective from the outset.

### 1. Plaintiffs fail to allege a deceptive practice or intent, as required for the Illinois Plaintiffs and Subclass's ICFA claim. [Count XII]

Plaintiffs do not allege any well-pleaded facts with particularity to state a claim under the ICFA. "In order to state a claim under the ICFA, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Camasta*, 761 F.3d at 739 (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). Importantly, "a plaintiff cannot rely on the same allegations to plead both deceptive and unfair practices"; thus, "if the allegations are predicated upon concealment, omission, or misrepresentation," as here, the Court should read the claim to rely on

a deception theory. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 847–48 (S.D. Ohio 2012). Here, Plaintiffs do not allege any facts with particularity to establish intent or causation. Separately, even if Plaintiffs alleged distinct, non-fraudulent conduct to allege an unfairness theory, they cannot show the practice was unavoidable, as required.

Plaintiffs' allegations render it implausible to infer that Defendant deceived consumers or intended for consumers to rely on the alleged deception. The "labels do not even obliquely suggest that the product does not contain [Salmonella] or will not expose users to [potential infection]." *Castillo*, 2022 WL 17976163, at *4 (N.D. Ill. Dec. 28, 2022). Without pointing to specific statements representing the Products as "healthy," "uncontaminated," and "safe" that each Plaintiff saw and relied upon, they do not state an ICFA claim, whether based on an omission or affirmative misrepresentation. *Id.* at *3–4 ("All Plaintiffs allege is a general failure to disclose, and without pointing to any statement regarding safety that conveys a material omission that they relied on, they have no viable omission-based ICFA claim."). Moreover, the allegations fail to show deceptive intent; Defendant's voluntary recall and its refund program render it implausible to infer an intent that consumers rely on the allegedly deceptive conduct. Under analogous circumstances, an Illinois court found that the offer to remedy an allegedly deceptive or unfair practice negates intent. *See Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 8–9 (Ill. App. Ct. 1997). In *Tudor*, a grocery store's registers overcharged consumers, but the store gave customers receipts and offered a money-back guarantee. *Id.* The court found that notifying customers of potential overcharges and offering a remedy "indicates defendant did not intend that plaintiff rely" on the higher prices its registers would charge. *Id.* at 9. The same is true here: upon learning of an issue, Defendant warned the public of potential contamination and offered a refund to those who bought recalled Products.

Independently, the failure to allege proximate causation with particularity defeats this

– 12 –

claim. Plaintiffs do not allege that they relied on representations that the Products are "healthy," "uncontaminated," and "safe" because none of those statements are on the label or on Defendant's websites. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010) (rejecting ICFA claim where challenged conduct did not cause plaintiff to purchase product). Plaintiffs' conclusory allegations do not suffice. Although the CAC generally avers that "Defendant intended that Plaintiffs Ferguson and Pisciotti and Illinois Subclass members rely on its respective aforementioned false statements, misrepresentations, omissions, and concealment of material facts in purchasing Jif® peanut butter products" (CAC ¶ 190), nowhere do they mention what they saw and where they saw it. *See Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 666 (N.D. Ill. 2016) (dismissing for lack of causation where plaintiff did not allege that they saw and relied on alleged misrepresentations).

Finally, Plaintiffs could have avoided the injuries they complain of. Simply put, a practice is not "unfair" under the ICFA if a consumer "could have avoided [it] by, for example, simply [buying] a different [product or brand]." *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 773 (S.D. Ill. 2010). Here, Plaintiffs' allegations concede the practice was avoidable. *E.g.*, CAC ¶ 98 ("There are other peanut butter products that were available to Plaintiffs and Class members.").

### 2. A statutory exemption bars the MCPA claim brought on behalf of the Michigan Plaintiff and Subclass. [Count XIII]

Plaintiffs also fail to state a claim under the MCPA for the same reasons discussed in II.A. above and for the additional reasons below. The MCPA contains an exception for, and therefore does not apply to, conduct that is "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." *Shaker v. Champion Petfoods USA Inc.*, 2022 WL 4002889, at *3 (E.D. Mich. Sep. 1, 2022) (citing Mich. Comp. Laws § 445.904 ["MCLA"]). "[T]he relevant inquiry is … whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited."

*Id.* at *3–4 (quoting *Liss v. Lewiston–Richards, Inc.*, 732 N.W.2d 514, 518 (Mich. 2007); *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28, 38 (Mich. 1999)). While a defendant bears the burden of showing this exemption applies, it is "broad," and it applies here. *See Cyr v. Ford Motor Co.*, 2019 WL 7206100, at *2 (Mich. Ct. App. Dec. 26, 2019).

The sale, manufacture, and labeling of food is specifically authorized—and subject to oversight—by state and federal laws and regulations. Indeed, Michigan state law adopts and incorporates federal standards for food processing, ingredients, and labelling. *See* MCLA §§ 289.7101 (processing standards), 289.8101 (labeling), and 289.1103 (statute applies to "the manufacture, production, processing, packing, exposure, offer, possession, and holding of any food for sale"). As other courts have recognized, this dooms consumer claims against food manufacturers under the MCPA, even if a defendant's product is defective. *E.g.*, *Shaker*, 2022 WL 4002889, at *3 (finding exemption applied to pet food manufacturer since it had license to process and distribute products, and it was "subject to the oversight of" state regulators). Plaintiffs' allegations make it clear that this exemption applies because they allege that violations of federal and state laws are what render Defendant's conduct "deceptive and unlawful." CAC ¶ 208 (citing 28 U.S.C. § 343(a)(i); MCLA §§ 289.1105(1)(a), 289.1109(p)). The same laws "explicitly authorize" Defendant's production, packing, and labeling of foods, triggering the MCPA's exemption. *See Kyles v. Keefe Commissary Network, LLC*, 2015 WL 1637466, at *8 (E.D. Mich. Apr. 13, 2015) ("[Defendant's] general conduct of producing and packaging food is explicitly authorized by federal food regulations, and is thus also exempt from liability under the MCPA.") (citing *Alexander v. Del Monte Corp.*, 2011 WL 87286, at *2 (E.D. Mich. Jan.11, 2011)).

### 3. Plaintiffs fail to allege a duty to speak or an affirmative act of concealment, defeating the fraudulent concealment claim. [Count IX]

Plaintiffs fail to state a claim for fraudulent concealment because they lack well-pleaded

– 14 –

allegations that Defendant had a duty to disclose, and they do not allege any affirmative act of concealment. To state a fraudulent concealment claim, Plaintiffs must establish that Defendant had a duty to disclose. In most jurisdictions, such a duty may arise when a defendant knows about the defect it allegedly concealed. Indeed, knowledge is an element in most jurisdictions. *See Goddard v. Stabile*, 924 N.E.2d 868, 874 (Ohio Ct. App. 2009) (Ohio law, knowledge); *B&P Process Equip. & Sys., LLC v. Applied Indus. Techs., Inc.*, 2016 WL 67580, at *3 (E.D. Mich. Jan. 6, 2016) (Michigan law, knowledge or reckless disregard); *Abazari v. Rosalind Franklin Univ. of Med. and Sci.*, 40 N.E.3d 264, 274 (Ill. App. Ct. 2015) (Illinois law, knowledge); *Harrell v. BMW of N. Am., LLC*, 517 F. Supp. 3d 527, 539–40 (D.S.C. 2021). Without knowledge of the alleged defect, or an independent source for a duty to disclose, liability does not attach to a speaker's silence. *E.g.*, *Abazari*, 40 N.E.3d at 275–76 (dismissing two theories of concealment for failure to plead knowledge, allowing third theory to proceed where statute created independent duty to disclose). Yet Plaintiffs come nowhere close to alleging Defendant's knowledge with the particularity required by Rule 9(b). *See Stewart v. Thrasher*, 610 N.E.2d 799, 804 (Ill. App. Ct. 1993) ("There can be no concealment of a fact if the party alleged to be concealing the fact is unaware of it.").

Separately, Plaintiffs' failure to allege any affirmative acts of concealment defeats this claim. Michigan and South Carolina, for example, do not recognize a fraud claim where the defendant is silent unless its conduct created a separate "legal or equitable duty of disclosure," such as responding to consumer inquiries. *Counts v. Gen. Motors, LLC*, 2022 WL 2079757, at *21–22 (E.D. Mich. Jun. 9, 2022); *see also Harrell,* 517 F. Supp. 3d at 540 (awareness of defect and continued dealings). To prevail on a fraudulent concealment claim, "the plaintiff must point to 'affirmative acts of concealment.' 'Mere silence or unwillingness to divulge wrongful activities is not sufficient.' Instead, there must be some 'trick or contrivance intended to exclude suspicion and

– 15 –

prevent inquiry.'" *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446–47 (6th Cir. 2012); *see also B&P Process Equip. & Sys., LLC*, 2016 WL 67580, at *3 ("'The acts relied on must be of an affirmative character and fraudulent.'"). Here, the only affirmative acts are Defendant's voluntary recall—which disclosed the issue—and its implementation of a refund program—which offered consumers a remedy. This demonstrates neither concealment nor fraudulent intent. *See, e.g.*, *Hamilton*, 2016 WL 4060310, at *5–6 (dismissing fraud claim because allegations of defendant's recall did not suggest "recklessness or knowledge with regard to the contamination").

### 4. Punitive damages are not a separate cause of action and, even if viable as such, Plaintiffs' allegations fail to state a claim. [Count XI]

Plaintiffs' separate cause of action for punitive damages suffers from multiple defects that require dismissal with prejudice. First, Plaintiffs cannot maintain an independent cause of action for punitive damages under multiple jurisdictions. Second, even if punitive damages could be available, Plaintiffs fail to plead that Defendant acted with "flagrant disregard" for consumers' safety, thus, their request for punitive damages must be dismissed.

In Ohio and Michigan, Plaintiffs cannot maintain a separate or independent cause of action for punitive damages. "[P]unitive damages are available in Michigan *only* when expressly authorized by the legislature." *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 400 (Mich. 2003). Yet, Michigan's consumer protection statute does not authorize punitive damages. *See Bakshi v. Avis Budget Grp., Inc.*, 2022 WL 704944, at *5 (E.D. Mich. Mar. 8, 2022) (citing MCPA, Mich. Comp. Laws § 445.911(2)). Likewise, "Ohio does not recognize a stand-alone cause of action for punitive damage." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 647 (N.D. Ohio 2014) (citing *Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331 (Ohio 1994)).

Separately, Plaintiffs lack well-pleaded factual allegations that Defendant acted with a "flagrant disregard for safety." *See Lum v. Mercedes Benz USA, LLC*, 2006 WL 1174228, at *2 (N.D.

Ohio Apr. 28, 2006); *Mellen v. Lane*, 659 S.E.2d 236, 251–52 (S.C. 2008) (willful, wanton, or reckless disregard); *Dewick v. Maytag Corp.*, 324 F. Supp. 2d 894, 901 (N.D. Ill. 2004) (requiring "willful and wanton" conduct). In fact, their allegations show the opposite: upon learning of the alleged contamination, and before the FDA concluded its investigation, Defendant instituted a recall and a robust refund program to compensate those who bought Products. *Compare* CAC ¶ 32 (FDA issued "safety alert" on May 20, 2022), *id.* ¶ 34 (Defendant began recall on May 20, 2022); *with id.* ¶ 23 (FDA disclosed data from investigation as part of a May 26, 2022, update).

**B.      The remaining claims lack well-pleaded factual allegations to state a claim.**

**1.      The economic loss doctrine bars Plaintiffs from seeking recovery in tort for an allegedly defective product. [Counts II, III, IV, V, VI, VII, VIII, and IX]**

The economic loss doctrine applies when plaintiffs allege "purely economic losses arising out of the quality of the products," and it bars those plaintiffs from "pursu[ing] their independent tort claims." *Murphy v. Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 606 (E.D. Mich. 2010). The doctrine applies to claims brought by consumers, even when they lack privity with the defendant, *see id.*, and it applies to fraud claims "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold." *Id.* at 608; *see also McKinney v. Microsoft Corp.*, 2011 WL 13228141, at *6 (S.D. Ohio May 12, 2011) (noting Ohio codified this doctrine in a statute) (citing O.R.C. § 2307.71(A)(7)).

As courts in multiple circuits have explained, plaintiffs are limited to contract damages for allegedly defective products when, as here, the only alleged injury stems from "disappointed expectations" about product quality. *See, e.g.*, *TreeHouse Foods, Inc. v. SunOpta Grains & Foods Inc.*, 2019 WL 1429337, at *4 (N.D. Ill. Mar. 29, 2019); *Murphy*, 695 F. Supp. 2d at 606–08; *Harrell*, 517 F. Supp. 3d at 540–41. This is true even when plaintiffs allege misrepresentations. *See, e.g.*, *Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, at *6–7 (N.D. Ill. Apr. 8,

– 17 –

2022); *Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 50 (S.C. 2009); *Shaker*, 2022 WL 4002889, at \*7 (Michigan law). Allowing Plaintiffs' tort claims to proceed results in "[i]mposing liability merely for the creation of risk when there are no actual damages," which "drastically changes the fundamental elements of a tort action, makes any amount of damages entirely speculative, and holds the manufacturer as an insurer against all possible risk of harm." *Sapp*, 687 S.E.2d at 50. Thus, courts have routinely dismissed claims for product liability, negligence, misrepresentations, and breach of implied warranties when plaintiffs only allege economic damages arising from a contract with defendant. *E.g.*, *In re Boeing 737 MAX Pilots Litig.*, 2022 WL 16553025, at \*26 (N.D. Ill. Oct. 31, 2022) (Illinois law, negligence, product liability); *Jones v. Lubrizol Advanced Materials, Inc.*, 559 F. Supp. 3d 569, 601–02 (N.D. Ohio 2021) (Michigan law, negligence, failure to warn); *Cohen v. Subaru of Am., Inc.*, 2022 WL 714795, at \*11, \*13 (D.N.J. Mar. 10, 2022) (Illinois and South Carolina law, product liability); *Madden v. Petland Summerville, LLC*, 2022 WL 2806408, at \*13 (D.S.C. Jul. 18, 2022) (South Carolina law, negligence); *MedChoice Fin., LLC v. ADA All. Data Sys., Inc.*, 957 F. Supp. 2d 665, 671 (S.D. Ohio 2012) (Ohio law, fraud, negligence, strict liability); *Honeycutt v. Thor Motor Coach, Inc.*, 2022 WL 17340471, at \*4–5 (E.D. Mich. Nov. 30, 2022) (Michigan law, "economic loss doctrine bars [] implied warranty claim").

### 2. Plaintiffs' SCUTPA claim suffers from multiple fatal defects. [Count XIV]

Plaintiffs' SCUTPA claim is not well-pleaded, and it cannot proceed as a class action. "In order to establish a SCUTPA violation, a plaintiff must demonstrate '(1) that the defendant has engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest.'" *Ethox Chem., LLC v. Coca-Cola Co.*, 2013 WL 41001, at \*2 (D.S.C. Jan. 3, 2013) (quoting *Havird Oil v. Marathon Oil Co., Inc.*, 149 F.3d 283, 291 (4th Cir. 1998)). However, "Federal courts have recognized

that class action suits may not be brought pursuant to SCUTPA." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009); *see also* S.C. Code § 39–5–140 ("Any person […] may bring an action individually, *but not in a representative capacity*.") (emphasis added). Thus, the Court should dismiss Count XIV and the South Carolina subclass.

The Court should also dismiss the individual SCUTPA claims of Plaintiffs Bopp and Kraljevich because they fail to allege any harm to the public interest. The FDA declared the recall over, and Defendant addressed all potential issues. The cost of product recalls is enormous and Defendant has every incentive to avoid any future incident. Thus, Plaintiffs fail to plausibly allege that the potential for a repeat violation is possible or likely. *E.g.*, *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004); *Ethox*, 2013 WL 41001, at *2 ("[C]onclusory allegations, without supportive facts, are not enough to survive [a] motion to dismiss. […] the complaint fails to allege any specific procedures or business practices that create the potential for repetition.").

### 3. Plaintiffs fail to state a breach of warranty claim. [Counts I, II, and VI]

First, Plaintiffs failed to provide notice of their express and implied warranty claims prior to filing, which alone bars recovery and requires dismissal. *See Forsher*, 2020 WL 1531160, at *8 (Adams, J.) ("Neither filing a lawsuit nor claiming that Defendant should have had knowledge constitutes notice under applicable law."). While differing on exact requirements for notice, Illinois, Michigan, South Carolina, and Ohio all require pre-suit notice to come from plaintiffs; defendant's general awareness or independent knowledge of an issue does not suffice. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996) ("[T]he notice requirement [in Illinois] is satisfied only where the manufacturer is somehow appraised of the trouble with the particular product purchased by a particular buyer."); *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) ("Even if Kroger had independent knowledge of its alleged breach, this does not satisfy the [] requirement for pre-litigation notice."); *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264,

– 19 –

284 (E.D. Mich. 2021) ("Michigan courts interpret the notice requirement strictly, requiring that 'upon discovering a breach, the buyer must provide reasonable pre-suit notice to even a remote manufacturer lest the buyer be barred from any remedy.'"); *Sandviks v. PhD Fitness, LLC*, 2018 WL 1393745, at *2–3 (D.S.C. Mar. 20, 2018) (finding lawsuit filed in another jurisdiction and pre-suit demand letter failed to satisfy notice requirement where neither raised claims of plaintiff who brought case). Plaintiffs do not come close to alleging that they satisfied the pre-suit notice requirement. The Court need not accept their conclusory assertions that they performed "[a]ll conditions precedent," (CAC ¶¶ 57, 71), or that "Defendant was on notice of this breach," (*id.* ¶ 110), as Plaintiffs never personally provided pre-suit notice, nor do they even allege that they did.

Second, Plaintiffs lack privity with Defendant and privity is required for a breach of express warranty claim in Illinois and Michigan. *See, e.g.*, *Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 765–66 (N.D. Ill. 2022) (Illinois law); *Montgomery v. Kraft Foods Glob., Inc.*, 822 F.3d 304, 308–09 (6th Cir. 2016) (Michigan law). Additionally, Illinois and Ohio require privity to enforce implied warranties—including the implied warranty of merchantability—against a manufacturer. *See Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 620–21 (N.D. Ohio 2016) (Ohio law); *Bakopoulos*, 592 F. Supp. 3d at 767 (Illinois law). While Plaintiffs allege a third-party beneficiary theory to avoid the privity requirement, (*e.g.*, CAC ¶¶ 68–69, 112), their allegations are conclusory and fail to relieve them of the burden of showing privity. *See Traxler*, 158 F. Supp. 3d at 624–25 ("Plaintiffs claim that 'Plaintiffs and class members are intended third-party beneficiaries of contracts' between Defendants and their dealers. They make no other specific allegations supporting this contention. Absent some additional allegation, Plaintiffs' purchase of [the] Products from [a store] was a mere 'downstream consumer transaction.'").

Third, Plaintiffs' express warranty claim fails since Plaintiffs fail to allege the specific

language with which Defendant purportedly guaranteed the quality of the Products. *See supra* Section II.A; *see also Bakopoulos*, 592 F. Supp. 3d at 765–66 ("Because warranties are creatures of contract, the language of the warranty itself is what controls and dictates the obligations and rights of the parties involved."); *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 753 (N.D. Ohio 2010) (dismissing express warranty claim based on statements that were merely "an affirmation [] of the value of the goods" since such statements "do[] not create a warranty"). Plaintiffs only make the conclusory allegation that "Defendant represents through its advertising, labeling, marketing, and packaging, that [the Products] are safe for their intended use" (CAC ¶ 56), but never points to any specific statement on the label or on Defendant's website where any such statement is made.

### 4. Plaintiffs' product liability allegations, whether in negligence or in strict liability, fail to state a claim. [Counts III, IV, V, VII, and VIII]

Plaintiffs fail to allege an injury caused by alleged Salmonella contamination in the Products they purchased. This is required to hold a manufacturer liable under all theories advanced in the CAC. *See, e.g.*, *Arnott v. FCA, US LLC*, 2020 WL 6918621, at *2 (D.S.C. Nov. 24, 2020) ("Under both causes of action for strict liability and negligence, [plaintiff] must show that '(1) he was injured by the product . . . because the product was in a defective condition[.]'"); *Corwin v. Conn. Valley Arms, Inc.*, 74 F. Supp. 3d 883, 888, 890 (N.D. Ill. 2014) (same); *Avendt v. Covidien*, 262 F. Supp. 3d 493, 518, 520 (E.D. Mich. 2017) (recognizing same elements apply to a failure to warn claim). As explained in Sections I.B and II.B.1, Plaintiffs merely allege economic loss, which bars them from recovery in tort. Moreover, they do not plausibly allege that the Products they purchased contained Salmonella or that they fell ill after consuming the Products.

"In the context of defective products, it 'is not enough' for a plaintiff 'to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the *plaintiffs must allege that their product actually exhibited the alleged defect*.'" *Wallace v. ConAgra Foods*,

*Inc.*, 747 F.3d 1025, 1030–31 (8th Cir. 2014) (emphasis added). Relying solely on Defendant's voluntary recall for *potential* Salmonella contamination,[9] and a handful of illnesses (CAC ¶ 23), Plaintiffs ask the Court to infer that each Product covered by the recall—including the ones they purchased—contained Salmonella. But "[t]he fact that the peanut butter was recalled does not mean that it was contaminated." *In re ConAgra Peanut Butter Prods. Liab. Litig.*, 2010 WL 3883439, at *2 (N.D. Ga. Sep. 29, 2010) (noting less than 2% of products covered by recall contained Salmonella). Absent allegations to plausibly infer that all—or even a majority—of the recalled Products are contaminated, it is pure speculation to infer that every Plaintiff purchased a defective product. *See Wallace*, 747 F.3d at 1030–31 (finding some of defendant's "kosher" products were not kosher but still dismissing since "the consumers give no reason to think *all* [products] did not meet kosher standards," and "it is unclear whether even a bare majority [] were not kosher"); *Forsher*, 2020 WL 1531160, at *5 (Adams, J.) (finding allegations insufficient when plaintiff relied on statistics showing a "50% probability" that products have attribute being challenged).

### a.  Plaintiffs fail to plausibly allege a duty to warn. [Counts IV and VII]

Manufacturers do not have freestanding duties to warn of all possible dangers associated with their products. Rather, "the plaintiff must show that a manufacturer knew or should have known its product posed the *particular* risk at issue in the case." *Mitchell v. City of Warren*, 803 F.3d 223, 229–30 (6th Cir. 2015); *see also Avendt*, 262 F. Supp. 3d at 520–21 ("A company does not have a duty to warn of *all* theoretically possible dangers."); *Hill ex rel. Covington v. Briggs & Stratton*, 856 F.2d 186 (table), 1988 WL 86620, at *1–3 (4th Cir. 1988) (applying foreseeability standard under South Carolina law); *Kirsten v. W.M. Barr & Co., Inc.*, 1997 WL 136328 (N.D. Ill.

---

[9] FDA, *J. M. Smucker Co. Issues Voluntary Recall* (May 20, 2022) (last visited Feb. 3, 2023), *available at* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/j-m-smucker-co-issues-voluntary-recall-select-jifr-products-sold-us-potential-salmonella (cited in CAC ¶¶ 5–6).

– 22 –

Mar. 19, 1997) (same). This also applies to a strict liability theory. *See, e.g.*, *Cervelli v. Thompson/ Ctr. Arms*, 183 F. Supp. 2d 1032, 1040–41 (S.D. Ohio 2002) ("[T]he standard imposed upon the defendant in a strict liability claim [alleging] inadequate warning is the same as that imposed in a negligence claim."); *Briggs & Stratton*, 856 F.2d 186 (table) (South Carolina); *Kirsten*, 1997 WL 136328 (Illinois); *Avendt*, 262 F. Supp. 3d at 520–21 (Michigan) (citing MCLA § 600.2948(3)).

Defendant did not owe a duty to warn because the CAC does not plausibly allege Defendant knew about the alleged Salmonella contamination. For starters, asserting that Defendant knew of the alleged contamination due to its "superior position," (CAC ¶ 125) suggests the claim "sounds in fraud." *See Kondash v. Kia Motors Am., Inc.*, 2016 WL 11246421, at *14–15 (S.D. Ohio Jun. 24, 2016) (reviewing cases and finding that theory of "exclusive knowledge" supports duty to speak in fraud cases, but not in negligence cases). As explained in Section II.A.3, Plaintiffs' allegations fail to allege a duty to speak due to the lack of particularity in their conclusory allegations. They fare no better under Rule 12(b)(6). Plaintiffs allege *no facts* from which the Court can infer that Defendant had reason to suspect the Products may be contaminated before it initiated its voluntary recall. Plaintiffs "cannot simply write the words 'knew or should have known' in a complaint and survive a [] motion to dismiss." *Porter v. Cub Cadet LLC*, 166 N.E.3d 201, 205 (Ill. App. Ct. 2020). The Court is left to speculate as to why the alleged presence of Salmonella in a 2010 environmental sample near Defendant's facility means that Defendant knew or should have known that Products would contaminated in 2022—after more than twelve years without incident. *See* CAC ¶ 85. Moreover, Defendant's voluntary recall was based on *potential* Salmonella contamination,[10] showing that Defendant *did* act when it had reason to suspect the Products were

---

[10] FDA, *J. M. Smucker Co. Issues Voluntary Recall* (May 20, 2022) (last visited Feb. 3, 2023), *available at* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/j-m-smucker-co-issues-voluntary-recall-select-jifr-products-sold-us-potential-salmonella (cited in CAC ¶¶ 5–6).

potentially defective, further undermining an inference that it had sufficient knowledge any sooner.

### b.  Plaintiffs fail to plausibly allege negligent conduct. [Counts III & V]

"'The key distinction between a negligence claim and a strict liability claim lies in the concept of fault.' In a strict liability claim, 'the focus is on the condition of the product,' whereas a negligence claim considers the condition of the product as well as a defendant's fault." *Corwin*, 74 F. Supp. 3d at 890 (quoting *Calles v. Scripto–Tokai Corp.*, 864 N.E.2d 249, 263–64 (Ill. 2007)); *see also McRee v. Dick's Sporting Goods, Inc.*, 2017 WL 5201525, at *2–3 (D.S.C. Nov. 9, 2017) ("Under a negligence theory, […] unlike strict liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault.'"). Thus, as is true here, when allegations boil down to "[a]n assertion that the [product] was 'defective,' without any factual elaboration, [it] is insufficient," to impose liability for negligence. *Corwin*, 74 F. Supp. 3d at 888–90.

Plaintiffs' negligent design claim also fails due to their failure to allege an alternative design. *See, e.g.*, *Holland ex rel. Knox v. Morbark, Inc.*, 754 S.E.2d 714, 720–21 (S.C. Ct. App. 2014) ("[P]roof of a reasonable alternative design is necessary to establish whether a product is unreasonably dangerous in a design defect case."); *Kaminski v. Libman Co.*, 748 F. App'x 1, 4–5 (6th Cir. 2018) (recognizing that Michigan has "a pure negligence, risk-utility test in products liability actions against manufacturers […] predicated upon defective design."); *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011) (risk-utility test considers "the availability and feasibility of alternate designs"). Plaintiffs merely assert in a conclusory fashion that the risks of the design outweigh its benefits, and that alternatives are feasible, (CAC ¶¶ 98–99), however, that does not plausibly state a claim.

### c.  Plaintiffs' negligence claims are preempted and make no sense in any event. [Counts III & V]

Plaintiffs have no negligence per se claim and, therefore, do not (because they cannot)

assert negligence based on an alleged violation of a statute. Plaintiffs' negligence claims relying on violations of federal law are also preempted. "Congress impliedly preempted any private action seeking to enforce duties created by the FDCA and its implementing regulations," which means "any claim that relies on the FDCA or its implementing regulations '[a]s a critical element' is barred." *Aaron v. Medtronic, Inc.*, 209 F. Supp. 3d 994, 1009 (S.D. Ohio 2016). Plaintiffs do just that by relying on federal law and regulated conduct as the source of Defendant's duty of care, and to allege a breach of that duty. *See* CAC ¶¶ 83.a, 208 (alleging violations of "section 343(a)(i) of [FDCA] and Mich. Comp. Law §§ 289.1105(1)(a), 289.1109(p)"). Since enforcement of the FDCA is left to the FDA's discretion, "plaintiffs cannot bring a claim for violation of these regulations." *Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *5 (N.D. Ill. May 19, 2022). Likewise, Plaintiffs cannot rely on a violation of Michigan's statute for their negligence claim because, as explained in Section II.A.2, Michigan exempts manufacturers from liability for conduct which is regulated by federal or state authorities, including the "processing and packing of food at its plants." *Alexander*, 2011 WL 87286, at *2.

### d. Plaintiffs' design defect claims are fatally flawed. [Counts V, VIII]

Plaintiffs fail to plausibly allege that Defendant designed the Products to include Salmonella; their design defect claims fail. The issue boils down to the difference between a design defect and a manufacturing defect. As one court explained, a "manufacturing defect exists when, at the time a product leaves the manufacturer's control, it deviates in some material way from its intended design [. . .]. A design defect exists when, at the time the product leaves the manufacturer's control, the foreseeable risks associated with the design outweigh the benefits." *Creech v. Emerson Climate Techs., Inc.*, 2015 WL 13898761, at *4 (S.D. Ohio Jul. 23, 2015); *see also McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 756 (E.D. Mich. 2019) (same); *Bensenberg v. FCA US LLC*, 31 F.4th 529, 535 (7th Cir. 2022) (Illinois law, same); *cf. Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 326

(S.C. Ct. App. 1995) (South Carolina evaluates "the reasonableness of the *manufacturer's action in designing the product*") (emphasis added). Here, Plaintiffs allege the defective condition resulted from "the design of the [Products]," (CAC ¶¶ 96, 99, 136–37), yet nowhere do they allege facts that make it plausible to infer that Defendant designed the Products to include Salmonella.

Independently, Plaintiffs only allege harm to the Products—diminished value—defeating this claim. *See McKinney*, 2011 WL 13228141, at *6 (Ohio law) (citing O.R.C. § 2307.71(A)(7)); *Sapp*, 687 S.E.2d at 49 (South Carolina, "there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself."); *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 587 (Ill. 1989) ("[T]here must also be physical harm caused by that product […] to award damages in either strict products liability or negligence."); *Sullivan Indus., Inc. v. Double Seal Glass Co., Inc.*, 480 N.W.2d 623, 629–30 (Mich. Ct. App. 1991) ("Allegations of only economic loss do not implicate tort law concerns with product safety.").

### 5. Plaintiffs' unjust enrichment claim suffers from multiple pleading defects, requiring dismissal. [Count X]

In general, to state a claim for unjust enrichment, a plaintiff must plausibly allege that they conferred a benefit on defendant, to plaintiff's detriment, which defendant realized and retained under inequitable circumstances. *See, e.g.*, *MetroPCS v. Devor*, 215 F. Supp. 3d 626 (N.D. Ill. 2016); *Haskin v. Rhodes*, 2018 WL 3660707 (S.C. Ct. App. 2018); *Custom Pack Sols., Inc., v. Great Lakes Healthcare Purchasing Network, Inc.*, 2018 WL 1020671, at *4 (Mich. Ct. App. Feb. 22, 2018). Here, Plaintiffs pursue unjust enrichment "in the alternative to their other causes of action." CAC ¶ 157. Thus, the claim "will stand or fall" with the other claims that rely on the same facts; dismissing those claims requires dismissal of the unjust enrichment claim. *See Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 756–57 (C.D. Ill. 2020) (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Independently, the Court should dismiss this claim

– 26 –

because Defendant did not obtain a benefit at Plaintiffs' expense, nor would its retention of a benefit be inequitable on these facts.

The CAC lacks well-pleaded allegations that Defendant retained a benefit, or that the benefit came at Plaintiffs' expense. Defendant recalled the Products and implemented a robust refund program. For this reason, Defendant did not retain a benefit under inequitable circumstances. Plaintiffs' unexplained decision not to accept that offer—and pursue litigation instead—would render restitution inequitable because it would deplete funds otherwise available for Defendant to reimburse consumers. *See Cleary*, 656 F.3d at 520 & n.5; *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 383 (N.D. Ill. 2010) (noting that attorneys' fees in a class action also reduce funds available to compensate plaintiffs and putative class members), *aff'd*, 654 F.3d 748 (7th Cir. 2011). Second, Plaintiffs cannot show that any alleged benefit came at their detriment. Plaintiffs do not allege personal injury, nor that Defendant's recall would not have fully compensated them. The only alleged injury is Defendant's alleged failure to disclose a risk with the Products before Plaintiffs' purchases. But "the mere violation of a consumer's legal right to know about a product's risks, without anything more, cannot support a claim that the manufacturer unjustly retained the revenue from the product's sale to the consumer's detriment." *Cleary*, 656 F.3d at 519–20.

Lastly, Plaintiffs' allegations that the parties entered a contract with an express warranty covering defects defeats their unjust enrichment claim under the laws of multiple jurisdictions. *See In re Aqua Dots*, 270 F.R.D. at 386; *AP Alternatives, LLC v. Rosendin Elec., Inc.*, 2020 WL 2526957, at *6 (N.D. Ohio May 18, 2020) ("[E]ven at the motion to dismiss stage, if the existence of the contract is not in dispute, courts routinely dismiss unjust enrichment claims as precluded by the contract."); *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 505–06 (E.D. Mich. 2021) (same, adding that contract still bars claim even when pleaded in the alternative and when parties dispute

– 27 –

whether warranty covered the alleged defect).

### III. The Court should strike the nationwide class allegations under Rule 12(f) or 23(b).

Finally, the Court should strike the proposed nationwide class for any claim that survives. "[A] motion to strike raises the question of certification before a plaintiff moves to certify a class, even with little to no discovery, where the complaint shows that maintaining a class is not possible." *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045 (N.D. Ohio 2022); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) ("Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation"). Thus, a motion to strike, while incorporating the standards of Rule 23, "can be determined at the Motion to Dismiss stage." *Forsher*, 2020 WL 1531160, at *9 (Adams, J.) ("The Court may strike defective class allegations at the pleading stage when those claims could not satisfy the Rule 23 requirements."). A motion to strike class allegations should be granted where "(1) the complaint itself demonstrates the requirements for maintaining a class action cannot be met, and (2) further discovery will not alter the central defect in the class claim." *Colley v. Proctor & Gamble Co.*, 2016 WL 5791658, at *2 (S.D. Ohio Oct. 4, 2016).

The Court should strike Plaintiffs' nationwide class allegations because they do not raise common questions of law. Under Ohio's choice-of-law analysis, federal courts in a diversity action apply the law of the state that has the "most significant relationship" to the dispute. *See Hartford Accident & Indem. Co. v. FFP Holdings LLC*, 490 F. Supp. 3d 1226, 1228–29 (N.D. Ohio 2020) (citing *Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992)). "Because the central event upon which a products liability claim is normally based is the sale of the goods, injured parties would expect that the law of the place of sale should govern with respect to injuries caused by those defects." *See Nationwide*, 415 F. Supp. 2d at 775 (applying principle to allegations of "strict liability, negligence, and breach of implied and express warranties."). Necessarily, a

nationwide class covers purchases in all fifty states, meaning this Court would have to apply each state's substantive law. *See Pilgrim*, 660 F.3d at 946 (using Ohio choice-of-law analysis to explain that states where consumers reside have strongest interest in applying their laws).[11]

A single nationwide class, therefore, is "not manageable," since, for example, variations in state law create "an impossible task [out] of instructing a jury on the relevant law." *Pilgrim*, 660 F.3d at 948; *see also id.* at 948–49 (discussing negligence, contract, consumer fraud, and products liability claims and striking nationwide class allegations notwithstanding "many common issues of fact"). Moreover, "permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Donelson v. Am. Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021). Unsurprisingly then, this Court and many others have stricken or denied nationwide classes raising the same claims that Plaintiffs bring here. *E.g.*, *Forsher*, 2020 WL 1531160, at *9 (Adams, J.) (breach of express warranty); *Pilgrim*, 660 F.3d 943, 948–49 (negligence, products liability, and contract claims) (collecting cases from multiple circuits); *Szabo v. Bridgeport Machs.*, 239 F.3d 672, 674 (7th Cir. 2001) (fraud and products liability); *Hale v. Enerco Grp.*, 288 F.R.D. 139, 147 (N.D. Ohio 2012) (fraud, negligence, product liability); *Bechtel v. Fitness Equip. Servs.*, 339 F.R.D. 462, 480–81 (S.D. Ohio 2021) (misrepresentation, express warranty); *In re Aqua Dots*, 270 F.R.D. at 386–87, *aff'd*, 654 F.3d 748 (7th Cir. 2011) ("[T]he law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment."); *Duvall v. TRW*, 578 N.E.2d 556, 560 (Ohio 1991)

---

[11] Due to page limitations, Defendant will note briefly how the laws of the fifty states differ with respect to each claim in the CAC. Defendant is aware that the Court may require more briefing on this issue, and Defendant is prepared to supplement this argument with additional briefing and/or fifty-state surveys to illustrate the unmanageability of nationwide class claims on these causes of action. At the same time, Defendant notes that courts in this circuit have stricken nationwide class allegations without requiring a fifty-state survey. *E.g.*, Defs' Mot. to Strike at 15, *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045 (N.D. Ohio 2022) (No. 1:20-cv-00511).

(punitive damages, negligence, strict liability); *In re N. Dist. of CA, Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 850 (9th Cir. 1982) (punitive damages); *Donelson*, 999 F.3d at 1092 (finding proposed class lacked "cohesiveness" under Rule 23 where claims raised "numerous individual determinations regarding [. . .] each purchaser's reliance.").

This defect requires dismissal with prejudice. As this Court has noted, further discovery or an amended pleading cannot cure variations in state law. *See Forsher*, 2020 WL 1531160, at *10 (Adams, J.) (explaining why subclasses would not resolve manageability issue). Rather, to avoid striking the nationwide class, Plaintiffs "must credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles." *See Hale*, 288 F.R.D. at 147 (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986), *cert. denied*, 482 U.S. 915 (1987)). Plaintiffs cannot satisfy that burden here. *See, e.g.*, *Duvall*, 578 N.E.2d at 559–60 (showing 39 out of 50 states have common laws on one of the claims at issue did not satisfy plaintiff's burden).

## CONCLUSION

For the reasons stated within, Plaintiffs' Consolidated Class Action Complaint should be dismissed in its entirety, with prejudice. In the alternative, the Court should strike the nationwide class for all applicable claims it does not dismiss.

Dated: February 3, 2023

Respectfully submitted,

By:      */s/Ronald Y. Rothstein*

Ronald Y. Rothstein (*pro hac vice*)
Sean H. Suber (*pro hac vice*)
Thomas F. McAndrew (*pro hac vice*)
Annie R. Steiner (*pro hac vice*)
Alexander W. Kontopoulos (*pro hac vice*)
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600

– 30 –

Fax: (312) 558-5700
RRothste@winston.com
SSuber@winston.com
TMcAndrew@winston.com
ASteiner@winston.com
AKontopoulos@winston.com

*Counsel for Defendant*
*The J. M. Smucker Company*

## CERTIFICATE OF SERVICE

I, Ronald Y. Rothstein, an attorney, hereby certify that I caused a copy of the foregoing document to be served by electronic means on all Electronic Filing Users of record, on February 3, 2023, and that all parties required to be served have been served. I hereby further certify that this document complies with the page limitations for a complex track case as set forth in Local Rule 7.1(f).

*/s/Ronald Y. Rothstein*
Ronald Y. Rothstein