UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Naythan A. Ward, John Kraljevich, Joe Pisciotti, Cameron Bopp, and Tyneisha Ferguson, individually and on behalf of others similarly situated, | ) ) ) ) ) | CASE NO: 5:22CV885 |
| | ) | JUDGE JOHN ADAMS |
| Plaintiffs, | ) ) | |
| | ) | **ORDER** |
| v. | ) ) | |
| The J.M. Smucker Company, | ) ) | |
| | ) | (Resolves Docs. 29, 40) |
| Defendant. | ) ) | |

Pending before the Court is Defendant J.M. Smucker Company's ("Smucker") motion to dismiss Plaintiffs' class action complaint (Doc. 29). Upon review, the motion to dismiss is GRANTED.

I. Statement of Facts

Plaintiffs class action complaint alleges various causes of action tied a product recall for a lot of peanut butter produced by Smucker under its Jif brand and purchased by the Plaintiffs. The products at issue were voluntarily recalled by Smucker after an FDA investigation in May of 2022 into a *Salmonella* outbreak which suggested a possible connection between consumption of peanut butter from the lot numbered 1274425–2140425 and the outbreak. The FDA investigation uncovered a total of 21 illnesses connected to outbreak, including four hospitalizations and no deaths.

Upon learning of the risk, Smucker immediately announced a voluntary recall for potentially affected products. As part of its recall, Smucker advised purchasers of the lot to dispose

of the peanut butter or return it to the point of purchase. Smucker offered rebate coupons via its website for replacement peanut butter products. As of July 27, 2022, the FDA investigation declared the outbreak to be over and that all potentially contaminated products should have been removed from sale.

Plaintiffs allege that peanut butter they purchased was from the affected lots and was potentially contaminated with *Salmonella*. Doc. 27 at 3. Plaintiffs, however, do not allege substantive facts suggesting that any of them consumed the recalled peanut butter and became ill. Doc. 27 at 20, 33. Instead, Plaintiffs rest their argument for claim for an injury in fact on purely economic injury as a result of the alleged contamination and the recall. Doc. 34 at 11–12. Plaintiffs request nationwide class action status to act on behalf of all purchasers of the recalled peanut butter, including those who consumed the product and became ill. They allege monetary damages from the expense of purchasing peanut butter that could not be safely consumed, for paying more than the fair market value of the peanut butter due to false, deceptive, or misleading representations about the peanut butter's quality, for emotional distress, for annoyance, for lost time, and for personal injuries resulting from consumption of contaminated peanut butter.

## II.  Motion to Dismiss Pursuant to Rule 12(b)(1)

The case-or-controversy requirement of Article III of the Constitution limits the judicial power to resolving actual or imminently threatened injury to persons. *Summers v. Earth Island Institute*, 555 U.S. 488, 492–93 (2009). "To establish standing, the plaintiffs must allege they suffered an actual or imminent injury, not a conjectural or hypothetical one." *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 380 (6th Cir. 2015) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. at 560–61). Plaintiff bears the burden of showing that he has standing for each type of relief sought. *Summers,* 555 U.S. 488 at 493. The pleading does not require detailed factual allegations, but must

contain more than labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662 at 678 (2009). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id*.

### A. Damages Arising out of Personal Injury

The named Plaintiffs rest their argument for an injury in fact on economic injuries, rather than an allegation that they actually consumed recalled peanut butter and became ill. Doc. 34 at 11–12. Fed.R. Civ.P. 23(a)(3) requires typicality for plaintiffs to represent a class, meaning that the class claims must be fairly encompassed by named plaintiffs' claims. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citing *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980)). Plaintiffs who did not consume the peanut butter and become ill have not suffered a representative personal injury typical of any potential class members who did become ill. Accordingly, to the extent that the complaint could be interpreted to encompass these claims, it is properly dismissed.

### B. Damages Arising Out of Economic Loss

Plaintiffs allege a number of legal theories built around the same common facts, chiefly being unable to safely consume peanut butter they purchased and therefore losing the benefit of their bargain, but also for the perceived loss of value of Defendant's peanut butter as a result of the recall, for emotional distress, for annoyance, and for lost time. Plaintiffs rely generally upon the following logic espoused by another District court:

> Plaintiffs claim that they paid a premium for the Products at issue based on false, deceptive, and misleading representations. Plaintiffs correctly argue that

> "[m]onetary harm is a classic form of injury in fact. Indeed it is often assumed without discussion." (Pl.'s Opp'n. 22) (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d at 293) (internal citation omitted). Accordingly, at this stage of the litigation, Plaintiffs sufficiently allege an actual injury which is concrete and particularized.

*In re Gerber Probiotic Sales Pracs. Litig.*, No. CIV.A. 12-835 JLL, 2013 WL 4517994, at *5 (D.N.J. Aug. 23, 2013).  However, in so arguing, Plaintiffs ignore that they are in fact in the class of cases earlier distinguished in that same litigation.

> In arguing that Plaintiffs did not suffer an injury-in-fact, Defendant relies on a number of consumer protection cases where the products at issue contained potentially dangerous substances, but the plaintiffs suffered no ill effects. (Def.'s Mot. 25) (citing *In re Fruit Juice Products Mktg. & Sales Practices Litig.*, 831 F.Supp.2d 507 (D.Mass.2011) (plaintiffs suffered no injury-in-fact where they alleged that fruit juice contained trace amounts of lead); (Def.'s Reply 14–15) (citing *Koronthaly v. L' Oreal USA, Inc.*, 2008 WL 2938045, at *4–5 (D.N.J. Jul.29, 2008) (plaintiff did not have standing where she alleged she was denied the benefit of the bargain when she purchased lipstick containing lead). However, as discussed above, that is not the substance of Plaintiffs' claim.

*Id*.  Plaintiffs fall squarely within the class that was unsuccessfully argued in *Gerber* as they alleged nothing more than purchasing a *potentially* contaminated product.

Plaintiffs' claims most closely resemble those just recently found insufficient by the Seventh Circuit under similar facts:

> Plaintiffs' alleged injury is hypothetical or conjectural. When purchasing the infant formula, plaintiffs received what they asked for. At that point, there was no known risk of contamination and no loss of the benefit of the bargain or premium price paid. Once plaintiffs learned of the unsanitary conditions at the Sturgis facility and potential risk of contamination, then they were told not to use the formula, and Abbott offered a refund. So, there was not a time when plaintiffs were at a risk of harm.

> Plaintiffs' claimed injury is also not particularized because they do not allege that any of the products they purchased were contaminated. Nor do plaintiffs plead facts suggesting that contamination of Abbott's products was sufficiently widespread to plausibly affect any given unit of infant formula, including the ones they purchased. Plaintiffs claim only that there was a "potential risk" the products may have been contaminated, but they do not say they were subject to that risk in a personal and individual way.

*In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, No. 23-2525, 2024 WL 1394247, at *3 (7th Cir. Apr. 2, 2024); *see also Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014) (holding that allegations of a risk of a defect, not a universal defect, did not rise above speculative injury and therefore did not confer Article III standing). Plaintiffs' complaint suffers from similar fatal flaws. While a generous reading of the complaint might suggest that Plaintiffs have alleged that they received products that were *actually* contaminated, it is clear from reading the totality of the complaint that no such allegation is made. Rather, Plaintiffs rely upon the fact that they purchased products from the recalled lots. The Court agrees with the authorities cited above that the exposure to such a potential risk is insufficient to create Article III standing. Accordingly, the motion to dismiss the class action complaint is hereby GRANTED.

### III. Conclusion

For the foregoing reasons, Smucker's motion to dismiss the class action complaint (Doc. 29) is GRANTED. Smucker's accompanying motion to strike is DENIED AS MOOT. For the same reasons, Smucker's supplemental motion to dismiss directed at the Mullins complaint (Doc. 40) is GRANTED. This matter is hereby DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

| April 10, 2024 | /s/ Judge John R. Adams |
|---|---|
| Date | JUDGE JOHN R. ADAMS |
| | UNITED STATES DISTRICT COURT |